[Civ. No. 23066. Third Dist. Mar. 7, 1984.]

INA D. CARR, as Administrator, etc., Plaintiff and Appellant, v.
PROGRESSIVE CASUALTY INSURANCE COMPANY,
Defendant and Respondent.

COUNSEL

G. Joseph Snyder for Plaintiff and Appellant.

Bullen, McKone, McKinley, Gay, Keitges & Pach and Joseph J. DeHope, Jr., for Defendant and Respondent.

OPINION

**SPARKS, J.**—In this case we consider whether a claim under *Royal Globe Ins. Co.* v. *Superior Court* (1979) 23 Cal.3d 880 [153 Cal.Rptr. 842, 592 P.2d 329], for unfair insurance settlement practices survives the death of the third party claimant. We conclude that it does.

Plaintiff, the administrator of the estate of Gary Olsen Carr (Carr), appeals from a judgment of dismissal entered after the trial court sustained

without leave to amend the demurrer of defendant Progressive Casualty Insurance Company (Progressive). We reverse.

■ Since this appeal follows the sustaining of a demurrer, we accept as true the properly pleaded allegations of the complaint. (*Thompson v. County of Alameda* (1980) 27 Cal.3d 741, 746 [167 Cal.Rptr. 70, 614 P.2d 728, 12 A.L.R.4th 701].) Plaintiff alleged that on March 22, 1978, while Carr was riding in a vehicle owned and operated by his brother, Royce Carr (Royce), Carr received injuries for which a claim was subsequently made against Royce and defendant Progressive, Royce's automobile insurance carrier. The automobile policy issued to Royce provided personal injury liability limits in the amount of $15,000 per person and $30,000 per accident.

Carr thereafter brought a personal injury action against Royce. In January 1980 Carr made a demand upon Progressive for settlement in the amount of $15,000. At the time of the demand, Progressive had been furnished with evidence of "medical specials of approximately $4,427.72, as well as medical reports concerning the injuries received by . . . Carr," including a report by Progressive's examining doctor dated January 3, 1980.[1] Notwithstanding Carr's demand, no offer of settlement was made by Progressive.

On January 2, 1981, Carr committed suicide. Thereafter, the administrator of Carr's estate was substituted as plaintiff in the personal injury action that Carr had initiated against Royce. The matter was then submitted for judicial arbitration. On the eve of arbitration, Progressive offered to settle for $5,000; plaintiff rejected the offer. In June 1982 the arbitrator entered an award in plaintiff's favor for $6,591.36. The award was later reduced to a judgment. This lawsuit against Progressive followed in November 1982.

Plaintiff alleges in this action that Carr took his own life because of "emotional problems, which were if not wholly [*sic*] caused by, were in part caused by his inability to go back to work, as a result of the injuries he sustained [in the automobile accident], and his lack of financial resources, with which to pay his own way." The complaint further alleges:

"VII

"That plaintiff is informed and believes that the liability against . . . ROYCE, . . . was evident and clear, or at the very least reasonably clear,

---

[1]The doctor's report included findings that Carr suffered a fracture of the spinal transverse processes, caused by the accident or other violent trauma.

and that decedent . . . Carr was entitled to a settlement for the injuries that he received as a result of said accident.

" . . . . . . . . . . . . . . . . . . . .

## "XV

"That [Progressive] . . . [is] engaged in the business of insurance in the State of California. As such, and because the subject insurance policy was issued and delivered in . . . California, [Progressive] . . . [is] subject to the provisions of § 790.03(h), of the California Insurance Code. Said statute imposes upon [Progressive] . . . certain duties concerning the processing, investigation and settlement of the claims of insureds and plaintiffs. Said statute was intended to prevent the type of injury and damage set forth herein.

## "XVI

"That plaintiff is informed and believes that the conduct of [Progressive] . . . constitutes unfair general business practices in violation of California Insurance Code § 790.03, including, but not limited to subsection (h)(5).

## "XVII

"That by reason of the conduct of [Progressive] . . . Carr . . . took his own life, and was denied the proper amount of compensation that was due him for the injuries he sustained in the accident . . . .

## "XVIII

"Plaintiff is informed and believes the Estate of Gary Carr is entitled to compensatory damages, in an amount within the jurisdiction of the . . . court.

## "XIX

"That the actions of [Progressive] . . . were without just or reasonable cause and were knowingly committed with the intent to gain for [Progressive] . . . an unfair advantage over . . . and to deprive . . . Carr of his rightful damages that were due him through the insurance company that provided coverage for . . . Royce . . . .

"Said actions were done willfully, fraudulently, maliciously, oppressively, and with a conscious disregard for the decedent . . . Carr's rights and

with the intent to vex, annoy, harass and [injure] . . . CARR, and therefore the Estate . . . is entitled to recover exemplary damages . . . .''

Progressive demurred to the complaint. ██ ██ ██ ██ It asserted that since it appeared the action was one for wrongful death, the action must be dismissed as it was not prosecuted by the real party in interest.[2] Progressive also argued that any claim for wrongful death was barred by the statute of limitations because Carr died in January 1981 but the action was not filed until November 1982, beyond the one-year limitations period for a wrongful death action. (See Code Civ. Proc., § 340, subd. (3).) In the alternative, Progressive asserted that if the action were not for wrongful death, then no cause of action for breach of any statutory duty owed Carr survived his death. Progressive's argument is that a cause of action for unfair claims practices does not arise against an insurer until the injured party's action against the insured tortfeasor is concluded. Because Carr died prior to the conclusion of the personal injury action against Royce, no cause of action vested in Carr prior to his death which could now be prosecuted by plaintiff.

Plaintiff opposed the demurrer, asserting the action was not one for wrongful death, but was instead one for unfair claim practices committed by Progressive prior to Carr's death.

Following hearing and argument, the trial court without comment sustained the demurrer without leave to amend.

## I

While the complaint is hardly a model of pleading, we accept plaintiff's assertion that the action is not one for wrongful death but is rather for unfair claim practices committed by Progressive prior to the Carr's death.

---

[2]In a wrongful death case the action must be brought by the decedent's "heirs or personal representatives on their behalf." (Code Civ. Proc., § 377, subd. (a).) The personal representative "is made a statutory trustee to recover damages for the benefit of the heirs. As administrator of the estate he has no interest in the matter, for the fruits of any judgment he may recover do not belong to the estate. Those fruits pass to the heirs as statutory beneficiaries of the statutory trustee. They do not take them by way of succession. This statutory action was given for the benefit of the heirs of the deceased, and for no other purpose. It was enacted in order that they might compensate themselves for pecuniary injury suffered in the loss by death of a relative, and this being so the statute necessarily contemplates that there must be heirs of a deceased. If this deceased had no heirs, then this statute does not apply, and there can be no action; for there can be no statutory trustee if there be neither trust nor beneficiary." (*Webster* v. *Norwegian Mining Co.* (1902) 137 Cal. 399, 400 [70 P. 276].) Consequently, a complaint for wrongful death by an administrator which fails to allege the existence of heirs is fatally defective. (*Ibid.*; see also 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 787, p. 3085.) The complaint in this case did not allege that Carr had any heirs and, if construed as an action for wrongful death, the pleading is fatally defective.

"Insurance Code section 790.03, subdivision (h),[3] the claims settlement provision of California's Unfair Practices Act (Ins. Code, § 790 et seq.) lists a number of unfair settlement practices which constitute unfair methods of competition or unfair and deceptive acts or practices in the business of insurance." (*Schlauch* v. *Hartford Accident & Indemnity Co.* (1983) 146 Cal.App.3d 926, 932 [194 Cal.Rptr. 658]; fn. omitted.) In *Royal Globe Ins. Co.* v. *Superior Court, supra,* 23 Cal.3d 880, our Supreme Court considered whether a private litigant (i.e., one not a party to the insurance contract) may bring an action against an insurer to impose civil liability for violations of section 790.03, or whether the Insurance Commissioner has the sole authority to enforce the terms of the statute. The *Royal Globe* court held a third party claimant may sue the insurer for violating section 790.03, subdivision (h), ruling the statute was intended to prohibit unfair settlement practices directed against both claimants and insureds. (*Id.,* at pp. 884, 890.)

▪ Plaintiff's action is primarily based upon Progressive's alleged violation of section 790.03, subdivision (h)(5) (not attempting in good faith to effectuate a prompt, fair, and equitable settlement of a claim where liability is reasonably clear). ▪ ▪ ▪ ▪ Plaintiff claims that following the accident Royce's responsibility for Carr's injuries was clear, and Progressive's failure to effectuate a prompt and fair settlement caused injury to Carr.[4] Under *Royal Globe,* a third party claimant is entitled to assert such claim.

▪ On appeal, plaintiff contends that the cause of action for unfair claim practices had already accrued to Carr before his death but, under *Royal Globe,* suit had to be postponed until the conclusion of his underlying action against the insured. Progressive renews its abatement argument here. It again contends that a *Royal Globe* cause of action does not accrue until a final judgment establishing the liability of the insured has been entered; that

---

[3]Hereafter, all statutory references are to the Insurance Code unless otherwise indicated.

[4]We agree with the assessment of the statute by the United States Court of Appeal for the Ninth Circuit in *Beckham* v. *Safeco Ins. Co. of America* (9th Cir. 1982) 691 F.2d 898. There the insurer argued that "the phrase 'claims in which liability has become reasonably clear' was intended to refer only to those claims in which liability is effectively undisputed, such as rear-end collisions, situations, involving strict liability, and accidents where the insured admits having run a red light. In such claims, however, it seems to us that liability is clear, not just reasonably clear. Liability need not be effectively undisputed to be reasonably clear. Moreover, the duty imposed by [Ins. Code,] § 790.03 (h)(5) does not justify such a narrow reading of this phrase. The insurer is not required to settle claims in which liability is reasonably clear, it is simply required to make a good faith attempt to reach a settlement. While liability may be reasonably clear, damages may not be, and an insurer is not necessarily required to accept whatever settlement demand is made by the third-party claimant." (*Id.,* at p. 903, fn. 3; see also *Jackson* v. *State Farm Mutual Auto. Ins. Co.* (1983) 148 Cal.App.3d 1179 [196 Cal.Rptr. 474].)

Carr died before any such judgment was rendered; that a cause of action therefore did not exist in Carr at the time of his death; and that since a cause of action did not then exist, there was nothing to survive under Probate Code section 573. We conclude that both contentions are illegitimate. Plaintiff misapprehends when a *Royal Globe* cause of action accrues and Progressive misconstrues the phrase "cause of action" as it is used in Probate Code section 573.

It is true that the Supreme Court held in *Royal Globe* that plaintiff may not sue both the insured (for negligence) and the insurer (for breach of the Unfair Practices Act) in the same lawsuit. (*Royal Globe, supra,* 23 Cal.3d at pp. 891-892.) Noting that Evidence Code section 1155 provides evidence of insurance is not admissible to prove negligence, the court concluded it would be prejudicial to allow a third party claimant to bring a single action against both the insured and insurer.[5] The court also noted the damages suffered by a third party for an insurer's violation of the Unfair Practices Act may best be determined after the conclusion of the injured party's suit against the insured. (*Id.,* at p. 892.) The court thus held the action against the insurer was brought prematurely and that the trial court should have dismissed the insurer from the action. (*Ibid.*)

■ It is also true that a "cause of action ordinarily *accrues* when, under the substantive law, the wrongful act is done and *the obligation or liability arises,* i.e., when a suit may be brought." (2 Witkin, Cal. Procedure (2d ed. 1970) Actions, § 263, p. 1116, italics in original; see also *Dillon* v. *Board of Pension Commrs.* (1941) 18 Cal.2d 427, 430 [116 P.2d 37, 136 A.L.R. 800]; *Fosgate* v. *Gonzales* (1980) 107 Cal.App.3d 951, 961 [166 Cal.Rptr. 233]; *Los Angeles Co.* v. *Metropolitan C. Ins. Co.* (1933) 135 Cal.App. 26, 28 [26 P.2d 699, 27 P.2d 914].) ■ As the holding in *Royal Globe* implies, a statutory bad faith cause of action does not accrue until suit may be brought and such a suit "may not be brought until the action between the injured party and the insured is concluded." (*Royal Globe, supra,* 23 Cal.3d at p. 884.)[6] This implication was made explicit in *Nationwide Ins. Co.* v. *Superior Court* (1982) 128 Cal.App.3d 711 [180

---

[5]Not only would the presence of the insurer suggest to a jury that the insured tortfeasor has admitted responsibility for the injury suffered by the claimant, but also, the jury knowing the tortfeasor is insured, may be more apt to find for the plaintiff, believing the judgment will be paid by the insurer. (See Comment, *Extending the Liability of Insurers for Bad Faith Acts: "Royal Globe Insurance Company* v. *Superior Court"* (1980) 7 Pepperdine L.Rev. 777, 788-789.)

[6]In *Rodriguez* v. *Fireman's Fund Ins. Companies, Inc.* (1983) 142 Cal.App.3d 46 [190 Cal.Rptr. 705], the court held that the term "concluded" encompassed not only cases terminated by final judgment but also those where the underlying suit against the insured was resolved by complete settlement. Here there was neither a settlement nor a judgment before Carr's death and hence the action against the insured had not been concluded during Carr's lifetime.

Cal.Rptr. 464]. There, the third party claimant (plaintiff) successfully brought an action against the insured. The insured appealed, and while the appeal was pending, plaintiff brought a *Royal Globe*/statutory bad faith action against the insurer on the basis of the insurer's failure to settle the personal injury action. The *Nationwide* court held that as the appeal was still pending, the judgment against the insured was not final; thus, plaintiff's action against the insurer was premature. (*Nationwide Ins. Co., supra,* at pp. 713-714.) Since plaintiff had not secured a final judgment against the insured, she "has as yet no cause of action against Nationwide [the insurer]." (*Id.,* at p. 713.)

 But it does not follow that, because no cause of action arose during Carr's lifetime, none of his rights survive his death. Probate Code section 573 provides in relevant part: "Except as provided in this section no cause of action shall be lost by reason of the death of any person but may be maintained by or against his executor or administrator." As we shall demonstrate, for purposes of the survival statute, the phrase "cause of action" includes rights which have not yet ripened into an actionable claim.

It has often been noted that "[t]he term 'cause of action' is not easily defined, and no thoroughly satisfactory and all embracing definition has been laid down by the authorities. It may mean one thing for one purpose and something different for another, . . ." (1 Cal.Jur.3d, Actions, § 2, p. 429, fn. omitted.) If Progressive's interpretation were correct, then a cause of action which arose after decedent's death would never give rise to actionable rights in his personal representative. ██ ██ ██ ██ The simple answer is that the phrase "cause of action" in Probate Code section 573 includes a thing in action.[7] Civil Code section 954 expressly provides that: "A thing in action, arising out of the violation of a right of property, or out of an obligation, may be transferred by the owner. *Upon the death of the owner it passes to his personal representatives,* except where, in the cases provided in the Code of Civil Procedure, it passes to his devisees or successor in office." (Italics added.)

Thus, for example, contractual rights arising under a nonpersonal contract survive the death of a contracting party even though the breach of the contract by the other party, and hence the cause of action against him, did not arise until after the death of decedent. (See *Howard* v. *Adams* (1940) 16 Cal.2d 253, 258 [105 P.2d 971, 130 A.L.R. 1003]; *Janin* v. *Browne* (1881)

---

[7]"A thing in action is a right to recover money or other personal property by a judicial proceeding." (Civ. Code, § 953.) Although a thing in action includes a cause of action (*People* v. *Baker* (1978) 88 Cal.App.3d 115, 119 [151 Cal.Rptr. 362]), it also encompasses rights which are not yet mature or presently enforceable. (See *In re Marriage of Brown* (1976) 15 Cal.3d 838, 845 [126 Cal.Rptr. 633, 544 P.2d 561, 94 A.L.R.3d 164].)

59 Cal. 37, 44-45; *Pitzer* v. *Wedel* (1946) 73 Cal.App.2d 86, 91 [165 P.2d 971].)

Moreover, the legislative history of the survival statutes makes it clear that they were not intended to abate choses in action. Before the 1961 legislation, Civil Code section 956, dealing with the survival of tort actions, specifically referred to a "thing in action." It then provided in relevant part that "A thing in action arising out of a wrong which results in physical injury to the person or out of a statute imposing liability for such injury shall not abate by reason of the death of the wrongdoer or any other person liable for damages for such injury, nor by reason of the death of the person injured or of any other person who owns any such thing in action." (Stats. 1949, ch. 1380, § 2, p. 2400.) In 1961 the Legislature, acting on the recommendation of the California Law Revision Commission, modernized the law of survival by repealing Civil Code section 956 and by amending Probate Code section 573 to provide that "no cause of action shall be lost by reason of the death of any person . . . ." (Stats. 1961, ch. 657, §§ 1, 2 pp. 1867-1868; see also Recommendation Relating to Survival of Actions (Oct. 1960) 3 Cal. Law Revision Com. Rep. (1961) p. F-5; 2 Witkin, Cal. Procedure (2d ed. 1970) Actions, § 411, p. 1243.) As the Court of Appeal correctly noted in *Poon* v. *Poon* (1966) 244 Cal.App.2d 746 [53 Cal.Rptr. 365], "[i]t is clear from a reading of section 573 of the Probate Code, which was amended [in 1961] to state a comprehensive rule of survivability, that it has broadened rather than restricted the general rule of survivability." (*Id.*, at p. 753, fn. omitted.) Given this legislative history and statutory scheme, we conclude that a complete cause of action need not exist at the time of the injured party's death in order for rights to survive which later may mature in an actionable claim.

## II

We consider next what rights survived Carr's death. The complaint against Progressive asserts that Carr's estate is entitled to "compensatory damages" and "exemplary damages." As we have noted, when Carr died his personal representative was substituted as plaintiff in the action against Royce, the insured. Carr's cause of action against Royce survived and his administrator was entitled to recover in that action such damages as are allowed by Probate Code section 573. (*Herrero* v. *Atkinson* (1964) 227 Cal.App.2d 69, 76 [38 Cal.Rptr. 490, 8 A.L.R.3d 629].) Under that statute, "the damages recoverable by his executor or administrator are limited to such loss or damage as the decedent sustained or incurred prior to his death, including any penalties or punitive or exemplary damages that the decedent would have been entitled to recover had he lived, and shall not include damages for pain, suffering or disfigurement." Consequently, Carr's ad-

ministrator was entitled to, and did, recover damages for medical expenses and other pecuniary losses sustained prior to his death. The claim for those damages was therefore merged and extinguished by the judgment for $6,591.36 against Royce. (*Impac Imported Parts & Accessories Corp.* v. *Rattray* (1979) 95 Cal.App.3d 792, 797 [157 Cal.Rptr. 226]; 4 Witkin, Cal. Procedure (2d ed. 1971) Judgment, § 189, p. 3329; Rest.2d Judgments, § 18, com. a, p. 152.) By statute, no rights for damages for pain, suffering, emotional distress or disfigurement survived Carr's death and consequently his administrator could not recover them from either Royce or Progressive. (Prob. Code, § 573; *Neal* v. *Farmers Ins. Exchange* (1978) 21 Cal.3d 910, 920, fn. 3 [148 Cal.Rptr. 389, 582 P.2d 980].)

So the question is: What claim to damages survived Carr's death and the favorable judgment? At oral argument, counsel argued that the claim for punitive damages survived. He further asserted that he should have an opportunity to amend to allege other special damages which survived Carr's death.

First, as to punitive damages, we note that under Probate Code section 573 punitive damage claims now survive the death of the injured party. (*Dunwoody* v. *Trapnell* (1975) 47 Cal.App.3d 367 [120 Cal.Rptr. 859].) Plaintiff's complaint alleged that Progressive engaged in acts entitling the estate to recover "exemplary damages." We note further that an award of actual damages, either compensatory or nominal, is not necessarily a prerequisite for an award of punitive damages. (*Werschkull* v. *United California Bank* (1978) 85 Cal.App.3d 981, 1002-1004 [149 Cal.Rptr. 829].) As the court explained in *Werschkull*, while it is the settled rule in California that punitive damages cannot be awarded unless actual damages are suffered, the usual application of punitive damages is didactic in nature. ▮ Thus, the requirement of "actual damages" imposed by Civil Code section 3294 is simply the requirement that a tortious act be proven if punitive damages are to be assessed. Consequently, if damages are actually suffered, punitive damages may be awarded in appropriate cases even if the injured party is not awarded compensatory damages or is only awarded nominal damages. (*Ibid.*; see also 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 866, p. 3153; *id.* (1982 supp.) § 866, p. 448.)

▮ The clear import of this rule is that plaintiff's complaint could serve as a basis for an award of punitive damages because it alleges tortious acts of unfair settlement practices by Progressive which resulted in actual damages to Carr. ▮ In appropriate circumstances, punitive damages may be awarded for unfair insurance settlement practices. (See *Colonial Life & Accident Ins. Co.* v. *Superior Court* (1982) 31 Cal.3d 785, 791-792 [183 Cal.Rptr. 810, 647 P.2d 86], and cases cited there.)

Second, and apart from the issue of punitive damages, while plaintiff's counsel was unable to state at oral argument what other damages survived the death of Carr and the judgment in favor of his personal representative, plaintiff was not required to plead general damages (4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 843, p. 3139). The general damage allegations of the complaint are therefore sufficient to withstand a general demurrer.

Moreover, even if there were no surviving general damages, we can perceive of potential special damages that Carr may have sustained because of Progressive's alleged misconduct. Based upon this fact alone, it would have been erroneous to sustain the demurrer without leave to amend because there may be a reasonable possibility that an amended complaint could plead special damages. (*Cordonier* v. *Central Shopping Plaza Associates* (1978) 82 Cal.App.3d 991, 999 [147 Cal.Rptr. 558].)

On the damage issue, then, we conclude that a demurrer could not have been properly sustained because plaintiff's complaint could support an award of punitive damages and plaintiff may be able to amend the complaint to plead special damages.

The judgment is reversed and the cause remanded with directions to enter an order overruling the demurrer.

Evans, Acting P. J., and Dawson, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.