Opinion
 

 DALSIMER, J.
 

 This case presents the issue whether a plaintiff may recover damages in state court for intentional infliction of emotional distress resulting from wrongful termination of an employee in 1975 for assertion in 1974 of his rights under an employee benefit plan governed by the Employee Retirement Income and Security Act of 1974 (ERISA) (29 U.S.C. § 1001 et seq.). We have concluded that he may.
 

 Statement of the Case
 

 Plaintiff Walter F. Wayte, Sr., was employed by defendant Rollins Leasing Corporation (Leasing), a subsidiary of RLC Corporation (RLC) (formerly Rollins International, Inc.). Mr. Wayte, Sr., his wife, Christine Wayte, and their paraplegic son, Walter F. Wayte, Jr., sued the employer, the parent corporation, and RLC Corporation Voluntary Employees Beneficiary Association (VEBA) for damages caused by denial of two claims for medical benefits made on behalf of Mr. Wayte, Jr., and by the alleged
 
 *9
 
 wrongful termination of Mr. Wayte, Sr.’s employment occurring shortly after the last of these claims was made. VEBA is a medical benefits trust governed by ERISA.
 

 The action was tried upon the first amended complaint, which alleged breach of contract, intentional infliction of emotional distress, fraud, bad faith denial of benefits under an employee benefit plan, and wrongful termination.
 

 The jury determined by way of general verdicts: (1) that Mr. Wayte, Jr., was entitled to $17,335 in compensatory damages and nothing in punitive damages in his action against VEBA; (2) that Mr. Wayte, Sr., and Mrs. Wayte should not recover anything in their action against VEBA; (3) that Mr. Wayte, Jr., was not entitled to any compensatory damages in his action against Leasing but should recover from Leasing $50,000 in punitive damages; (4) that Mrs. Wayte should recover from Leasing $52,000 in compensatory damages and $50,000 in punitive damages; (5) that Mr. Wayte, Sr., should recover from Leasing $154,000 in compensatory damages and $50,000 in punitive damages; (6) that Mr. Wayte, Jr., should recover from RLC $258,400 in compensatory damages and $200,000 in punitive damages; (7) that Mr. Wayte, Sr., should recover from RLC $208,000 in compensatory damages and $950,000 in punitive damages; and (8) that Mrs. Wayte should recover from RLC $104,000 in compensatory damages and $200,000 in punitive damages. By way of special verdict the jury indicated that the amount of medical expenses as to which reimbursement was proper was $17,335 and that this amount was not included in any of the verdicts other than the verdict of Mr. Wayte, Jr., against VEBA.
 

 The trial court refused to enter the verdict of $50,000 in punitive damages in favor of Mr. Wayte, Jr., and against Leasing because it found that the jury had determined by its general verdict that Leasing had not caused Mr. Wayte, Jr., any damages. Mr. Wayte, Jr., appealed from that portion of the judgment that provides that he shall not recover anything from Leasing.
 

 Defendants thereafter filed a motion for judgment notwithstanding the verdict and motions for new trial. The motion for judgment notwithstanding the verdict and the motions of Leasing and VEBA for new trial were denied. The motion of RLC for new trial was denied upon the consent of plaintiffs to a reduction of the amount of damages awarded against that defendant.
 
 [1]
 

 
 *10
 
 Defendants appealed from the modified judgment and from the order denying the motion for a judgment notwithstanding the verdict. Plaintiffs filed a cross-appeal seeking restoration of the original verdicts against RLC. An action based on the events giving rise to the instant case has been filed in the federal district court
 
 (Wayte et al.
 
 v.
 
 Rollins Leasing Corp. et al.
 
 (C.D.Cal.) Dock. No. CV 80-5401-KN) and has been stayed pending the final outcome of the present litigation.
 

 In this appeal Mr. Wayte, Jr., contends that the court erred in refusing to enter the verdict for punitive damages against Leasing. He further contends that the court should have awarded him attorney fees against defendants either as an element of damages or as an item of costs.
 

 Defendants contend that the court had no jurisdiction over any of the causes of action asserted against them, maintaining that essential acts upon which those causes of action were premised occurred after January 1, 1975, the effective date of the section of ERISA providing for supersession of state law relating to employee benefit plans. (See 29 U.S.C. § 1144; 29 U.S.C. § 1002(1); 29 U.S.C. § 1002(3).) Alternatively, they contend that reversal of the verdicts against RLC and Leasing is required because those verdicts almost certainly include damages for retaliatory wrongful termination occurring as a result of an employee’s claim of benefits under an ERISA trust, a cause of action generally within the exclusive jurisdiction of the federal courts. (29 U.S.C. §§ 1132(e)(1), 1140, 1144(b)(1).) They further contend that no cause of action was stated by Mrs. Wayte against any of the defendants. Finally, defendants contend that the court erred in allowing extensive testimony about Mr. Wayte, Jr.’s paraplegic condition, that certain instructions were erroneously given and others were erroneously refused, and that the verdicts against RLC and Leasing are the product of passion and prejudice.
 

 Plaintiffs contend that the court abused its discretion by conditionally granting RLC’s motion for new trial.
 

 Facts
 

 Viewed in the light most favorable to the judgment, the evidence adduced at trial established the following: On March 17, 1969, Mr. Wayte, Sr., was employed by Spina Truck Leasing, Inc. (Spina), in Pennsylvania. The benefits of his employment included medical insurance for Mr. Wayte, Jr., under a group medical policy between the employer and Liberty Life Assurance Company of Boston (Liberty). That policy provided that an unmarried child between the ages of 19 and 23 was an eligible dependent “if attending school full-time” and financially dependent on the employee. It
 
 *11
 
 was further provided that, if the child was physically incapable of earning his living, coverage could be extended beyond the stated ages if the employee presented proof of the child’s incapacity to the company within 31 days of the child’s attainment of the age of 23. When Mr. Wayte, Sr., became employed by Spina, Mr. Wayte, Jr., was 22 years of age, attending vocational school full time, and financially dependent on Mr. Wayte, Sr. It was stipulated that he was physically incapable of earning his living at that time and thereafter. Both Spina and Liberty were advised of Mr. Wayte, Jr.’s physical disability before he attained the age of 23, and Liberty acknowledged that coverage would continue.
 

 In 1970 Rollins International (now RLC) (the parent company) negotiated for the takeover of Spina. Mr. Don Lund, vice president of personnel and manager of the group insurance program at the parent company, told the employees of Spina that their group medical coverage under the parent company would be the same or better than it currently was. Mr. Wayte, Sr., informed Mr. Lund of Mr. Wayte, Jr.’s physical condition, and Mr. Lund personally assured him that his son would remain covered if Mr. Wayte, Sr., worked for Leasing (a subsidiary of the parent company) after the takeover.
 

 Because of these representations, Mr. Wayte, Sr., accepted employment with Leasing. During the employment by Leasing, the Liberty policy was replaced with a policy by New York Life Insurance Company that had more restrictive terms regarding eligibility of dependents to be covered. In reliance on Mr. Lund’s representations, Mr. Wayte, Sr., canceled his Blue Shield insurance policy covering Mr. Wayte, Jr., when he was transferred in June 1973 to California.
 

 In August 1972 the New York Life group medical policy was replaced by an employee medical benefit trust administered by VEBA. The booklet explaining the new medical plan provided: “Your dependents who may be covered are your spouse and each unmarried child from birth until his 19th birthday. If a child is still attending school full-time, is unmarried, and has the same permanent address as you do, you may continue him as your dependent until his 24th birthday. A child who is handicapped so that he must remain dependent on you may continue to be covered beyond age 23.” The booklet also stated: “This booklet is designed to outline the benefits for which you are eligible and does not create or confer any contractual or other rights. All rights with respect to the benefits of a member as provided by the insured portion of the Program will be governed solely by the Group Master Policies issued by Confederation Life Association.” Mr. Wayte, Sr., was never provided with any copy of the master policies.
 

 
 *12
 
 In April 1974, while the employee medical benefit trust was still in effect, a medical claim was submitted to VEBA on Mr. Wayte, Jr.’s behalf. The claim was initially denied on the ground that Mr. Wayte, Jr., was not covered due to his age, but it was ultimately paid. In July 1974 James Burns, a manager of the parent company’s insurance department, assured Mr. Wayte, Sr., that his son was indeed covered and that he would not encounter any such problems in the future.
 

 Mr. Wayte, Jr., was hospitalized between May and July 1974, and a second claim was submitted on his behalf. Although checks were prepared for payment of the claim, John Carlisle Peet, head of the insurance department of the parent company and a trustee of VEBA, ordered that payment be withheld.
 

 On September 23, 1974, VEBA denied the second claim at the direction of Mr. Peet. The letter denying the claim stated that Mr. Wayte, Jr., had never been an insured dependent. No reason was given for this conclusion.
 

 Mr. Peet testified that he based the denial on language in the New York Life policy that the child must have been attending an accredited school between the ages of 19 and 23 for the extended coverage to apply. The booklet provided to the employees under the VEBA health plan, however, made no mention of the fact that the New York Life policy’s definition of eligible dependents would supplement the definition provided in the booklet, nor was Mr. Wayte, Sr., otherwise so advised.
 

 On December 9, 1974, Mr. Wayte, Sr., wrote to Mr. Peet, asking for a written explanation of the portion of the benefit plan upon which Mr. Peet based his interpretation. On February 21, 1975, Mr. Burns wrote to Mr. Wayte, Sr., at Mr. Feet’s direction, stating that VEBA’s Administrative Committee had reviewed the second claim and again concluded that Mr. Wayte, Jr., was not covered because he was not an eligible dependent.
 

 On April 23, 1975, Mr. Wayte, Sr.’s attorney, Ingall Bull, Jr., wrote to Mr. Burns, inquiring as to the legal basis for VEBA’s conclusion that Mr. Wayte, Jr., was not an eligible dependent. Defendants failed to reply to this letter. On June 16, 1975, Mr. Bull wrote to Mr. Burns, informing him that no reply to the April 23 letter had been received and demanding a reply within 10 days. The letter informed Mr. Burns that a collection agency had brought suit for payment for medical care rendered to Mr. Wayte, Jr., in 1974 and that the action was causing Mrs. Wayte and Mr. Wayte, Sr., considerable emotional distress.
 

 Since no reply was made to either letter, Mr. Wayte, Sr., presented a third claim on Mr. Wayte, Jr.’s behalf in July 1975. VEBA also denied this
 
 *13
 
 claim. In August 1975 Leasing terminated Mr. Wayte, Sr.’s employment in retaliation for his presentation of the second and third claims. This had the effect of terminating any coverage under the VEBA plan.
 

 All of the plaintiffs suffered severe emotional distress after the denial of the second claim. In the winter and spring of 1975 Mrs. Wayte received numerous telephone calls from collection agencies relative to nonpayment for the hospitalization on which the second claim was based. In those calls threats were made to take the family’s furniture. Mr. Wayte, Sr., would often find Mrs. Wayte upset and in bed when he returned home from work. She was especially susceptible to emotional distress in that she had a medical history of hospitalization for schizophrenia. After the denial of the second claim, Mr. Wayte, Sr., and Mrs. Wayte each experienced a significant weight loss. Mr. Wayte, Sr., lost approximately fifty pounds within only two and one-half months. Further, sometime in 1975 Mrs. Wayte’s physician prescribed tranquilizers for her because of her emotional state.
 

 Mr. Wayte, Jr., felt “anger or dismay” when the second claim was denied. Although he tried not to show his feelings, his mother noticed that he was nervous during this period. He testified that he was worried and angry when his mother received threatening telephone calls from the collection agencies and would get very upset upon seeing her reaction to those calls. He was shocked at the termination of his father’s employment.
 

 Jurisdiction
 

 ERISA permits a civil action to be brought for three purposes in state or federal court by a participant in or beneficiary of an employee benefit plan of an industry engaged in commerce: (1) to recover benefits under the plan, (2) to enforce the participant’s or beneficiary’s rights under the plan, and (3) to clarify his or her rights to future benefits.
 
 [2]
 

 
 *14
 
 Except for this limited area of concurrent jurisdiction, ERISA provides that federal district courts shall have exclusive jurisdiction of civil actions relating to those employee benefit plans governed by ERISA.
 
 [3]
 
 While most of the verdicts in this case present significant issues involving the scope of state court jurisdiction under ERISA, it is clear that no jurisdictional obstacle affects the verdict in favor of Mr. Wayte, Jr., and against VEBA. That verdict was solely for medical benefits under an employee benefit plan—a matter as to which ERISA expressly gives the state courts concurrent jurisdiction. (29 U.S.C. §§ 1132(a)(1)(B), 1132(e)(1).)
 

 In addition to providing that civil actions under ERISA are generally within the exclusive jurisdiction of the federal courts, ERISA further states that, effective January 1, 1975, its provisions relating to employee benefit plans shall supersede “any and all State laws.”
 
 [4]
 
 Section 1144 qualifies the language of express preemption, however, as follows: “(b)(1) This section shall not apply with respect to any cause of action which arose, or any act or omission which occurred, before January 1, 1975.”
 

 The federal circuits are divided as to the meaning of this latter provision. (Compare, e.g.,
 
 Woodfork
 
 v.
 
 Marine Cooks & Stewards Union
 
 (5th Cir. 1981) 642 F.2d 966, 970-971, with
 
 Lafferty
 
 v.
 
 Solar Turbines Intern.
 
 (9th Cir. 1982) 666 F.2d 408, 410, and
 
 Cowan
 
 v.
 
 Keystone Emp. Profit Sharing Fund
 
 (1st Cir. 1978) 586 F.2d 888, 895.)
 

 In
 
 Woodfork
 
 v.
 
 Marine Cooks & Stewards Union, supra,
 
 642 F.2d 966, the court held that the “act or omission” exception does not preclude preemption if an act essential to the cause of action occurred before January 1, 1975, as long as the cause of action accrued after that date.
 
 (Id.,
 
 at pp. 970-971.) The court opined that a different construction would render the cause-of-action exemption superfluous.
 
 (Ibid.)
 
 We are not persuaded by this analysis.
 

 
 *15
 
 The Ninth Circuit has taken a position contrary to
 
 Woodfork,
 
 apparently recognizing that to narrowly read section 1144(b) as the
 
 Woodfork
 
 court has done would render nugatory the act-or-omission exception. Thus, the Ninth Circuit has interpreted section 1144(b)(1) as allowing a cause of action to be maintained in state court based on state law that would otherwise be preempted by ERISA as long as the substantial conduct forming the basis of the cause of action occurred before January 1, 1975.
 
 (Menhorn
 
 v.
 
 Firestone Tire & Rubber Co.
 
 (9th Cir. 1984) 738 F.2d 1496, 1500-1503; see
 
 Lafferty
 
 v.
 
 Solar Turbines Intern., supra,
 
 666 F.2d 408, 410.) If other facts, such as exhaustion of administrative remedies or even causation of damages, must occur before the cause of action formally accrues, the occurrence of those facts after the effective date of ERISA does not defeat state court jurisdiction or preempt the applicable state law as long as the conduct that is central to the cause of action occurred before 1975.
 
 (Menhorn, supra,
 
 738 F.2d 1496, 1498-1503.)
 

 Thus, where the cause of action is based on damages flowing from denial of benefits, the crucial date for jurisdictional purposes is the date on which benefits were denied, not the date on which administrative review concluded that the denial should be affirmed even if the latter date determines when the cause of action formally accrued. The Ninth Circuit view is the better reasoned because it affords meaning to the words “any act or omission.”
 
 (Id.,
 
 at pp. 1501-1502.) Even were we to find the contrary line of cases to be more persuasive, however, we would follow the Ninth Circuit decisions on this issue because a conflict between the Ninth Circuit and this court on the jurisdictional issue would leave plaintiffs without any remedy in this case except for the very limited area in which ERISA provides for concurrent jurisdiction. (Cf.
 
 IT Corp.
 
 v.
 
 Superior Court
 
 (1978) 83 Cal.App.3d 443, 451 [147 Cal.Rptr. 828].)
 

 A central issue in this case is whether the trial court properly permitted the jury to consider whether Mr. Wayte, Sr., was wrongfully terminated for asserting Mr. Wayte, Jr.’s rights to benefits. ERISA provides: “It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . .” (29 U.S.C. § 1140.) Thus, where the only assertion of rights under the plan occurs after January 1, 1975, such an action for wrongful termination is clearly within the exclusive jurisdiction of the federal courts.
 
 (Johnson
 
 v.
 
 Transworld Airlines, Inc.
 
 (1983) 149 Cal.App.3d 518, 530 [196 Cal.Rptr. 896].)
 

 Where, however, as in the present case, the wrongful termination has resulted from plaintiffs’ challenge of a position taken before January 1,
 
 *16
 
 1975, denying a plaintiff’s rights under an employee benefit plan, the reasoning of
 
 Menhorn
 
 v.
 
 Firestone Tire & Rubber Co., supra,
 
 738 F.2d 1496 compels a different result. Under these circumstances the state court has jurisdiction of the wrongful termination action under the act-or-omission exception of section 1144(b). A central purpose of section 1144(b) is the avoidance of “piecemeal litigation.”
 
 (Menhorn, supra,
 
 at p. 1500, fn. 3.) As stated by the court in
 
 Menhorn,
 
 “We accept the proposition that an ERISA cause of action based on a denial of benefits accrues at the time the benefits are denied. This rule reflects a concern that it would be burdensome and unfair to require lay participants and beneficiaries to be constantly alert for possible errors or abuses that might give rise to a claim and start the statute of limitations running. It also seeks to avoid the burden on the judicial system of multiple actions, some of which might be premature. [Citations.]”
 
 (Id.,
 
 at p. 1501.) To require plaintiffs to litigate in the federal forum the wrongful termination cause of action, which involves much of the same proof as plaintiffs’ causes of action for intentional infliction of emotional distress and bad faith denial of benefits, would defeat rather than promote judicial economy and might well result in a duplication of damages. Accordingly, we hold that the entire action was properly tried in state court in that the state court had jurisdiction of the subject matter by virtue of the act-or-omission exception of section 1144(b).
 

 Mr. Wayte, Jr.’s Punitive Damages Award Against Leasing
 

 Mr. Wayte, Jr., correctly contends that it is not essential that the jury award general damages for an award of punitive damages to be appropriate. All that is required is proof of a tort which is of such a nature as to warrant imposition of punitive damages.
 
 (Clark
 
 v.
 
 McClurg
 
 (1932) 215 Cal. 279, 282-283, 285 [9 P.2d 505, 81 A.L.R. 908];
 
 Carr
 
 v.
 
 Progressive Casualty Ins. Co.
 
 (1984) 152 Cal.App.3d 881, 892 [199 Cal.Rptr. 835].) In
 
 Clark,
 
 although the jury had awarded no general damages, it awarded $5,000 in punitive damages. Noting that the evidence had established actual damages
 
 (Clark, supra,
 
 215 Cal. at p. 282), the court upheld the verdict by construing it as covering all of the plaintiff’s damages, both actual and punitive.
 
 (Id.,
 
 at p. 285.)
 

 In the case at bench uncontradicted evidence established that Mr. Wayte, Jr., was damaged by the termination of his father’s employment since that termination had the effect of destroying his future rights to medical benefits under the employee benefit trust. That the jury found the termination to be wrongful is apparent from the verdicts awarding general damages to Mr. Wayte, Sr., and Mrs. Wayte in their action against Leasing. Under these circumstances the court erred in failing to enter the verdict in favor of Mr. Wayte, Jr., and against Leasing for punitive damages.
 

 
 *17
 
 Sufficiency of Mrs. Wayte’s Allegations of Intentional Infliction of Emotional Distress
 

 Defendants’ contention that plaintiffs failed to allege that RLC intended to cause Mrs. Wayte to suffer emotional distress is without merit. The first amended complaint specifically alleges that the parent company represented to plaintiffs that Mr. Wayte, Jr., would be covered, that plaintiffs relied on these representations, that on September 23, 1974, defendants advised plaintiffs that he was not covered, and that by this denial of coverage RLC intended to and did cause plaintiffs severe emotional distress. Because the first amended complaint adequately alleged that RLC intended to and did cause Mrs. Wayte severe emotional distress (see
 
 Kelly
 
 v.
 
 General Telephone Co.
 
 (1982) 136 Cal.App.3d 278, 284, 287 [186 Cal.Rptr. 184];
 
 Fletcher
 
 v.
 
 Western National Life Ins. Co.
 
 (1970) 10 Cal.App.3d 376, 386-394, 396-404 [89 Cal.Rptr. 78, 47 A.L.R.3d 286]), it was proper to submit that cause of action to the jury.
 

 Admissibility of Evidence of Mr. Wayte, Jr.’s Medical History
 

 Defendants contend that the trial court abused its discretion in admitting extensive evidence of Mr. Wayte, Jr.’s paraplegic condition and related medical problems. We disagree. Such evidence was relevant to show the importance to Mr. Wayte, Jr., and his parents that he have adequate medical coverage and further to show that, as a result of this situation, plaintiffs may well have been more susceptible than the average person to suffering severe emotional distress when such coverage was improperly denied.
 

 Jury Instructions
 

 Defendants contend that the court erred in instructing the jury as follows: “It is unlawful under Federal and State law and a violation of a self-insured company’s duty of good faith and fair dealing to discharge, fine, suspend, expel, discipline, or discriminate against a participant or a beneficiary under a group medical program for exercising any right to which he is entitled under an employee benefit plan. If Walter F. Wayte, Sr.’s efforts to obtain medical coverage for his son Walter F. Wayte, Jr., were a substantial factor in bringing about his termination, then that termination is wrongful and plaintiff Walter F. Wayte, Sr., is entitled to recover all damages legally resulting therefrom, including damages for emotional distress in accordance with these instructions.”
 

 The court properly gave this instruction. For the reasons mentioned
 
 ante
 
 at pages 13-16, the trial court had jurisdiction of the cause of action for
 
 *18
 
 wrongful discharge. Evidence was presented that Mr. Wayte, Sr., worked for Leasing for six years during which he had been consistently assured that his work was satisfactory and that no reason was provided to Mr. Wayte, Sr., for his termination. This evidence was sufficient to raise the inference that Mr. Wayte, Sr., was terminated in violation of an implied-in-fact promise that he would not be discharged without good cause. (See
 
 Pugh
 
 v.
 
 See’s Candies, Inc.
 
 (1981) 116 Cal.App.3d 311, 328-329 [171 Cal.Rptr. 917].) Accordingly, this evidence was alone sufficient to warrant the instruction. (Also see
 
 Seaman’s Direct Buying Service, Inc.
 
 v.
 
 Standard Oil Co.
 
 (1984) 36 Cal.3d 752, 767-769 [206 Cal.Rptr. 354, 686 P.2d 1158];
 
 Wallis
 
 v.
 
 Superior Court
 
 (1984) 160 Cal.App.3d 1109, 1115-1120 [207 Cal.Rptr. 123].)
 

 Defendants also contend that the trial court erred in instructing the jury in accordance with BAJI No. 14.11 that damages could be awarded for lost earnings. Because the wrongful termination cause of action was properly before the jury, the trial court did not err in giving this instruction.
 

 Defendants next contend that the court committed prejudicial error in instructing the jury as follows: “Section 1022 of the federal statute, which has been referred to as ERISA, which became effective on January 1, 1975, having been passed by Congress on September 2, 1974, provides in part that a summary plan description of any employee benefit plan shall be furnished to the participants and beneficiaries, shall be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan. Both the plan description and summary plan description given to the employees shall contain the plan’s requirements respecting eligibility for participation and benefits and both shall also include a description of any circumstances which may result in disqualification, ineligibility, or denial or loss of benefits.”
 

 This instruction was not an accurate statement'of the applicable law. Title 29 United States Code section 1022(a)(2) provides: “A plan description . . . shall be prepared on forms prescribed by the Secretary [of Labor] . . . .” Federal regulations then -in effect provided (and still provide) that the administrator of an employee benefit plan was not required to file such a plan description with the Secretary and make copies thereof available to participants and beneficiaries until May 30, 1976. (29 C.F.R. § 2520.104-3(c) (1983).) Because ERISA and the related federal regulations did not technically require VEBA to provide such a description to the participants and beneficiaries in 1975, the court erred in giving this instruction. The error was harmless, however, because the booklet provided to Mr. Wayte, Sr.,
 
 *19
 
 by VEBA clearly described criteria of eligibility in such manner that Mr. Wayte, Sr., reasonably believed Mr. Wayte, Jr., to be covered.
 

 Defendants advance the related contention that the court erred in refusing to instruct the jury that VEBA had no obligation under ERISA to send to its participants and beneficiaries any summary plan description before May 30, 1976, or to inform them before that date of the claims procedure and remedies available under ERISA. Since this action is a transition case as to which state law applies, the court was correct in refusing the proffered instructions. They would only have served to confuse the jury and were not necessary for a fair resolution of the case.
 

 Defendants also contend that the court erred in instructing the jury that “Section 1104 of ERISA, also effective January 1, 1975; provided in part that a fiduciary under a plan shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of first providing benefits to participants and their beneficiaries and also to defray the reasonable expenses of administering the plan.” We need not determine whether the court erred in giving this instruction because it was not necessary to rely on ERISA to inform the jury that the trustees of VEBA owed a fiduciary duty to plaintiffs. Mr. Peet himself admitted that as a trustee he owed the highest duty to the participants and beneficiaries of the plan.
 

 Defendants contend that the trial court erred in instructing the jury as follows: “You are hereby instructed that a defendant who in its dealings with plaintiff, or any of them, knowingly permitted any of the following unfair claim practices is guilty of bad faith towards said plaintiff and is legally responsible for all emotional distress and other damages legally resulting therefrom: [S] 1. Misrepresenting to claimants pertinent facts or provisions relating to any coverage at issue; [f] 2. Failing to acknowledge and act reasonably promptly upon communications with respect to claims; [f] 3. Not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear; or [|] 4. Failing to provide promptly a reasonable explanation of the basis relied on in any governing document, in relation to the facts or applicable law, for the denial of a claim.”
 

 Defendants contend that the giving of the instruction was error because VEBA is not an insurance company and the instruction informed the jury that any one of the listed instances of misconduct was bad faith as a matter of law. We have concluded that the instruction was properly given. In
 
 Seaman’s Direct Buying Service, Inc.
 
 v.
 
 Standard Oil Co., supra,
 
 36 Cal.3d 752, the court held that in a commercial context a cause of action
 
 *20
 
 may be stated for bad faith denial of the existence of a contract even if insurance is not involved.
 
 (Id.,
 
 at p. 769.) Denial that Mr. Wayte, Jr., was covered was under the circumstances of this case a form of misrepresentation of provisions relating to coverage and was tantamount to denial of the existence of a third party beneficiary contract. Thus, that portion of the instruction referring to such misrepresentation was proper. It was also proper to instruct the jury as to the other three listed instances of misconduct because of the relationship of Mr. Wayte, Sr., to defendants. In
 
 Seaman’s Direct Buying Service
 
 the court stated, “In holding that a tort action is available for breach of the covenant in an insurance contract, we have emphasized the ‘special relationship’ between insurer and insured, characterized by elements of public interest, adhesion, and fiduciary responsibility. [Citation.] No doubt there are other relationships with similar characteristics and deserving of similar legal treatment.6”
 
 (Id.,
 
 36 Cal.3d at pp. 768-769.) Footnote 6 points out that the employment relationship has some of these same characteristics. (Id., at p. 769, fn. 6.)
 

 In
 
 Wallis
 
 v.
 
 Superior Court, supra,
 
 160 Cal.App.3d 1109, it was held that there is a cause of action for bad faith in the employment context
 
 (id.,
 
 at pp. 1115-1119), the court noting that the parties were in an inherently unequal bargaining position and that the employee entered the contract for financial stability and peace of mind.
 
 (Id.,
 
 at p. 1119.) The holdings of
 
 Seaman’s
 
 and
 
 Wallis
 
 compel the conclusion that, while VEBA is not technically an insurance company, its actions and those of the other defendants arising out of VEBA’s denial of the second claim entitled plaintiffs to the instruction as much as if VEBA were a company engaged in the “business of insurance” within the meaning of Insurance Code section 790.03. (See
 
 Royal Globe Ins. Co.
 
 v.
 
 Superior Court
 
 (1979) 23 Cal.3d 880, 890-891 [153 Cal.Rptr. 842, 592 P.2d 329].)
 

 Defendants make additional contentions concerning the court’s giving and failing to give certain other instructions to the jury. We have carefully examined each of these contentions and find that the error, if any, was not prejudicial.
 

 Lack of Passion and Prejudice
 

 Defendants’ contention that the verdicts against VEBA and Leasing and the reduced verdicts against RLC are the product of passion and prejudice cannot be sustained. The wealth of defendants was a proper subject of argument to the jury because of its relevance to a determination of the appropriate amount of punitive damages. (See Witkin, Cal. Evidence (2d ed. 1966) Circumstantial Evidence, § 377, pp. 335-336.) Plaintiffs’ financial situation was also a proper subject of closing argument in view of
 
 *21
 
 the evidence that collection agency telephone calls played a significant role in the causation of plaintiffs’ emotional distress. The trial court, having heard counsel’s reference to his personal beliefs about the facts as well as counsel’s reference to the corporate defendants’ status as foreign corporations, determined that these verdicts were not the product of passion and prejudice. The jury’s verdicts are entitled to a great deal of respect from this court, particularly when they have been approved by the trial judge by virtue of his denial of a motion for a new trial. A long line of cases, including
 
 Scott
 
 v.
 
 Times-Mirror Co.
 
 (1919) 181 Cal. 345, 366 [184 P. 672, 12 A.L.R. 1007], and
 
 Bertero
 
 v.
 
 National General Corp.
 
 (1974) 13 Cal.3d 43, 64 [118 Cal.Rptr. 184, 529.P.2d 608, 65 A.L.R.3d 878], teach that “. . . although the trial court’s determination is not binding upon a reviewing court, it is to be accorded great weight because having been present at the trial the trial judge was necessarily more familiar with the evidence. [Citations.]”
 
 {Ibid.)
 
 The court did not abuse its discretion in denying the motions
 
 of
 
 VEBA and Leasing for a new trial and deciding that the reduced verdicts against RLC were not the result of passion and prejudice.
 

 Sufficiency of Specification of Reasons Supporting Order Conditionally Granting RLC’s Motion for New Trial
 

 We have also concluded that the trial court did not abuse its discretion in its order conditionally granting RLC’s motion for new trial.
 

 The trial court’s specification of reasons for granting a new trial as to Mr. Wayte, Sr., unless he agreed to a reduction of punitive damages reads: “As to Walter Wayte, Sr., the punitive damages are over four times the amount of the compensatory damages and, from all of the evidence and in particular the evidence that this defendant’s conduct (outrageous as it was) was an isolated act against this particular family and not part of a program to limit medical claims and reduce expenses generally, the amount of the jury’s verdict as to punitive damages was in excess of the amount necessary adequately to punish the defendant and serve as an example to it and others.” The number of people affected by a defendant’s conduct is a factor that the trial court may consider in evaluating whether a punitive damage award is excessive.
 
 (Delos
 
 v.
 
 Farmers Group, Inc.
 
 (1979) 93 Cal.App.3d 642, 667 [155 Cal.Rptr. 843].) The court properly considered RLC’s net earnings in determining that a reduced award of punitive damages would adequately punish RLC and serve as a deterrent to that corporation and others.
 
 (Neal
 
 v.
 
 Farmers Ins. Exchange
 
 (1978) 21 Cal.3d 910, 928-929 [148 Cal.Rptr. 389, 582 P.2d 980].)
 

 The order conditionally granting RLC’s motion as to Mr. Wayte, Jr., was based on the identical reasons insofar as punitive damages were concerned.
 
 *22
 
 With respect to the order providing for a reduction of general damages, the court stated: “[T]he evidence as to future medical expenses was in considerable part speculative and uncertain and there was only evidence of a moderate amount of emotional distress on his part . . . .” While we may not agree with the trial court’s conclusion that there was only evidence of a moderate amount of emotional distress on the part of Mr. Wayte, Jr., we find its assessment of the evidence of future medical expenses to be supported by the record. Much of the evidence concerning Mr. Wayte, Jr.’s future medical expenses related to the expense of dialysis and a kidney transplant, neither of which was certain to be required. An order conditionally granting a motion for new trial on the ground that the damages awarded are excessive is presumed correct.
 
 (Id.,
 
 at pp. 932-933.) Where, as here, a material conflict of evidence exists as to the extent of damages, the trial court’s ruling will not be disturbed.
 
 (Id.,
 
 at p. 933.)
 

 The specification of reasons supporting the conditional granting of RLC’s motion for new trial as to Mrs. Wayte indicates that the order for reduction of punitive damages was based on the reasons mentioned
 
 ante
 
 at page 21 and states' the following with respect to general damages: “The court is convinced from all the evidence that the claim of emotional distress from denial of the medical claims and the collection efforts that were made has been considerably exaggerated. Distress over denial of the medical claims was ameliorated by the availability of collateral sources of payment, even though these sources did not immediately pay the entire expenses. The collection efforts in themselves were not especially unusual or outrageous and the amounts respecting which such efforts were made were not large.” Since there was conflicting evidence as to the extent of Mrs. Wayte’s emotional distress, we uphold the trial court’s determination of this issue.
 
 (Neal
 
 v.
 
 Farmers Ins. Exchange, supra,
 
 21 Cal.3d 910, 933.)
 

 Contrary to plaintiffs’ contention, the order conditionally granting RLC’s motion for a new trial contains a sufficiently clear and concise statement of the bases for such order. (See
 
 Mercer
 
 v.
 
 Perez
 
 (1968) 68 Cal.2d 104, 115 [65 Cal.Rptr. 315, 436 P.2d 315].)
 

 Attorney Fees
 

 The trial court did not abuse its discretion in denying plaintiffs’ oral motion to amend the first amended complaint to allege attorney fees as an item of damages of the cause of action for bad faith. (See
 
 Brandt
 
 v.
 
 Superior Court
 
 (1985) 37 Cal.3d 813 [210 Cal.Rptr. 211, 693 P.2d 796] [cause of action against insurer for bad faith may include as pled item of damages attorney fees incurred in seeking benefits due under the contract].) The court denied the motion for the reasons that it was made “too late” and would
 
 *23
 
 “injectQ too many new issues into the case.” A trial court has broad discretion to determine whether to allow amendment of a pleading at the time of trial.
 
 (Moss Estate Co.
 
 v.
 
 Adler
 
 (1953) 41 Cal.2d 581, 585-586 [261 P.2d 732].) The court acted well within its discretion in refusing to allow the amendment.
 
 (Id.,
 
 at p. 586; see
 
 Vogel
 
 v.
 
 Thrifty Drug Co.
 
 (1954) 43 Cal.2d 184, 188-189 [272 P.2d 1].)
 

 Mr. Wayte, Jr., is precluded from contending that he should have recovered attorney fees from Leasing as an item of costs under title 29 United States Code section 1132(g)(1) because he did not appeal from the order granting Leasing’s motion to tax costs. Such an order is made appealable by Code of Civil Procedure section 904.1, subdivision (b), where, as here, it is made after judgment. Accordingly, this court has no jurisdiction to consider Mr. Wayte, Jr.’s, contention. (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 83, p. 4094.) Plaintiffs have not contended in their brief on the appeal from the reduced judgment against RLC that the order granting RLC’s motion to tax costs was error.
 

 Disposition
 

 The judgment in favor of Walter F. Wayte, Jr., and against RLC Corporation Voluntary Employees Beneficiary Association is affirmed.
 

 The judgment against Walter F. Wayte, Jr., and in favor of Rollins Leasing Corporation is reversed, and the trial court is directed to enter the verdict of $50,000 in punitive damages.
 

 The judgment against Walter F. Wayte, Sr., and Christine Wayte and in favor of RLC Corporation Voluntary Employees Beneficiary Association is affirmed.
 

 The judgment in favor of Walter F. Wayte, Sr., and Christine Wayte and against Rollins Leasing Corporation is affirmed.
 

 The order denying defendants’ motion for judgment notwithstanding the verdict is affirmed.
 

 The judgment against RLC Corporation as reduced below is affirmed.
 

 Costs are awarded to the Way tes.
 

 Spencer, P. J., and Hanson (Thaxton), J.,.concurred.
 

 A petition for a rehearing was denied June 28, 1985, and the opinion was modified to read as printed above.
 

 [1]
 

 Mr. Wayte, Sr., consented to a reduction to $208,000 in compensatory damages and $208,000 in punitive damages. Mr. Wayte, Jr., consented to a reduction to $100,000 in compensatory damages and $50,000 in punitive damages. Mrs. Wayte consented to a reduction to $50,000 in compensatory damages and $50,000 in punitive damages.
 

 [2]
 

 Title 29 United States Code section 1132(a)(1)(B) provides, “(a) A civil action may be brought—[f] (1) by a participant or beneficiary [of an employee benefit plan]—[1] . . . [Í] (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.”
 

 ERISA defines the term “employee benefit plan” as including “any plan, fund, or program . . . established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, . . . medical, surgical, or hospital care or benefits . . . .” (29 U.S.C. § 1002(1)(A); 29 U.S.C. § 1002(3).) Title 29 United States Code section 1003(a) provides in pertinent part: “[T]his subchapter shall apply to any employee benefit plan if it is established or maintained— [f] (1) by any employer engaged in commerce or in any industry or activity affecting commerce; or [H] (2) by any employee organization or organizations representing employees engaged in commerce or in any industry or activity affecting commerce; or [H] (3) by both.”
 

 [3]
 

 Title 29 United States Code section 1132(e)(1) provides: “(e)(1) Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, or fiduciary. State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under subsection (a)(1)(B) of this section.”
 

 [4]
 

 Title 29 United States Code section 1144(a) provides: “(a) Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title. This section shall take effect on January 1, 1975.”