[Civ. No. 67696. Second Dist., Div. Four. Dec. 6, 1983.]

JOHN E. JOHNSON, Plaintiff and Appellant, v.
TRANS WORLD AIRLINES, INC., Defendant and Respondent.

COUNSEL

Fred L. Wright and Milford V. Smith for Plaintiff and Appellant.

Kadison, Pfaelzer, Woodard, Quinn & Rossi, James C. Roberts and John L. Carlton for Defendant and Respondent.

OPINION

AMERIAN, J.—

BACKGROUND

This is an appeal by John E. Johnson from a judgment of dismissal entered on April 20, 1982. The first amended complaint was dismissed after a de-

murrer by respondent, Trans World Airlines, Inc. (TWA), was sustained without leave to amend on July 14, 1981.[1]

In the original complaint filed by appellant on December 22, 1980, appellant sought to recover damages against TWA under common law theories of wrongful termination, bad faith, fraud and deceit arising from appellant's discharge as an employee of TWA on July 9, 1979. The complaint alleged that TWA terminated appellant's 18-year employment with TWA for the "sole purpose of depriving [him] of his pension benefits which would have accrued six months from the date of his termination."

TWA demurred to the complaint upon grounds that appellant's common law claims were preempted by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. (ERISA), a federal statute, and that exclusive jurisdiction over the cause was vested in the federal courts.[2] The demurrer was sustained on May 8, 1981.

Thereafter, on May 21, 1981, appellant filed a first amended complaint. The first cause of action is substantially similar to the original complaint with the exception that references to "pension benefits" in the original complaint are labeled in the first amended complaint as "employee benefits." Another difference between the two complaints is the allegation in the first amended complaint that the "employee benefits" which TWA promised to provide to appellant included five weeks paid vacation per year, annual accrued sick leave, free lifetime travel passes upon retirement, stock and thrift plan, medical and hospitalization plan, dental plan, $50,000 life insurance policy, disability policy and retirement plan.

The first cause of action alleges that appellant "was discharged from his employment with . . . TWA for the sole purpose of depriving [him] of his employee benefits . . . some of which benefits would have accrued six months from the date of his termination." The first amended complaint prays for damages for loss of earnings and loss of earning capacity, loss of employee benefits, general damages and punitive damages.

TWA again demurred contending that, changes in the amended complaint notwithstanding, the crux of appellant's claim remained the allegedly wrongful discharge for the sole purpose of interfering with the attainment of benefits provided in one or more employee benefit plans. TWA again

---

[1] The first amended complaint had included two causes of action. Demurrer to the first cause of action was sustained without leave to amend. On appellant's motion the second cause of action of the first amended complaint was dismissed without prejudice on March 19, 1982. Accordingly, we do not discuss the second cause of action in this appeal.

[2] Hereinafter all references are to the provisions of ERISA, unless otherwise specified.

urged that the state court lacked subject matter jurisdiction because the misconduct alleged in the first amended complaint was of the kind regulated by ERISA and that ERISA preempted appellant's state law claims.

The demurrer to the first cause of action of the first amended complaint was sustained on grounds that the complaint failed to state a cause of action.

## ISSUE

The issue in this appeal is whether appellant's common law claims for wrongful termination, bad faith, fraud and deceit are preempted by the provisions of ERISA, where the alleged employer misconduct concerns discharge solely for the purpose of denying employee benefits to appellant.

### PROVISIONS OF ERISA PERTINENT TO THE APPEAL

Before reaching the merits of this appeal it is necessary to recite the provisions of ERISA which are relevant in this case.

Section 1144(a) provides, inter alia, "the provisions of this subchapter [subchapter I - protection of employee benefit rights] and subchapter III [plan termination insurance] of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title." Subdivision (c)(1) of this same section provides that "the term 'State Law' includes all laws, decisions, rules, regulations, or other State action having the effect of law, of any State. . . ."

Section 1003(a) provides, in part, "[subchapter I] shall apply to any employee benefit plan if it is established or maintained— [¶] (1) by any employer engaged in commerce or in any industry or activity affecting commerce; or [¶] (2) by any employee organization or organizations representing employees engaged in commerce or in any industry or activity affecting commerce; or [¶] (3) by both."

Section 1002 defines the terms "'employee welfare benefit plan,'" "'employee pension benefit plan,'" and "'employee benefit plan.'" An employee welfare benefit plan is "any plan . . . which . . . is hereafter established or maintained . . . for the purpose of providing for its participants or their beneficiaries . . . (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits . . . ." (§ 1002(1).) An employee pension benefit plan is described as "any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee

organization, or by both, to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program— [¶] (A) provides retirement income to employees, or [¶] (B) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond, regardless of the method of calculating the contributions made to the plan, the method of calculating the benefits under the plan or the method of distributing benefits from the plan." (§ 1002(2).) " '[E]mployee benefit plan' or 'plan' means an employee welfare benefit plan or an employee pension benefit plan or a plan which is both an employee welfare benefit plan and an employee pension benefit plan." (§ 1002(3).)

Section 1140 provides in pertinent part that, "It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary . . . [(]of an employee benefit plan[)] . . . for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan . . . ."

Finally, section 1132(a) provides that "(a) A civil action may be brought—[¶] (1) by a participant or beneficiary— [¶] (A) for the relief provided for in subsection (c) of this section, or [¶] (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan; [¶] . . . . [¶] (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan; . . ." Subdivision (e)(1) of section 1132 further provides that, "[e]xcept for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, or fiduciary. State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under subsection (a)(1)(B) of this section."

## DISCUSSION

■ In California an employee may bring a suit against a former employer for wrongful termination of employment contract and breach of the implied-in-law covenant of good faith and fair dealing in employment contracts. The employee is not limited to contractual remedies but may maintain a tort action and recover damages, including punitive damages, which are traditionally recoverable in such actions where discharge of the employee violates fundamental principles of public policy. (*Tameny* v. *Atlantic Rich-*

*field Co.* (1980) 27 Cal.3d 167 [164 Cal.Rptr. 839, 610 P.2d 1330, 9 A.L.R.4th 314]; *Cleary* v. *American Airlines, Inc.* (1980) 111 Cal.App.3d 443 [168 Cal.Rptr. 722]; *Pugh* v. *See's Candies, Inc.* (1981) 116 Cal.App.3d 311 [171 Cal.Rptr. 917].)

■ For purposes of this appeal, since the demurrer was sustained, the truth of the allegations of the first cause of action will be assumed. (See *Glaire* v. *LaLanne-Paris Health Spa, Inc.* (1974) 12 Cal.3d 915 [117 Cal.Rptr. 541, 528 P.2d 357]; *Serrano* v. *Priest* (1971) 5 Cal.3d 584, 591 [96 Cal.Rptr. 601, 487 P.2d 1241, 41 A.L.R.3d 1187]; *Tameny* v. *Atlantic Richfield Co., supra,* 27 Cal.3d 167, 170.) Under this principle, the first cause of action of the first amended complaint does state a cause of action for wrongful termination, fraud, bad faith and deceit because it is alleged, inter alia, that appellant was discharged solely for the purposes of depriving him of various employee benefits; i.e., he was discharged without good cause.

■ The question thus presented is whether appellant's common law claims are preempted by ERISA. We conclude that, with the exception of his claims to lifetime travel passes and under the stock and thrift plan, his common law claims are preempted.

The first step of our inquiry here is whether the employee benefits enumerated in appellant's first amended complaint fall within the purview and regulation of ERISA. Under the definitions of employee benefit plan in section 1002 and its subdivisions, it is clear that most of the employee benefits enumerated in the first amended complaint are part of a comprehensive "employee benefit plan" provided by TWA to its employees.[3] Having reached this conclusion, the next step in our inquiry requires determination of whether TWA's alleged misconduct in discharging appellant for the sole purpose of depriving him of employee benefits is unlawful under ERISA. We conclude that such conduct is proscribed by ERISA.

Section 1140 makes it "unlawful . . . to discharge . . . a participant . . . [(]of an employee benefit plan[)] . . . *for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan . . . .*" (Italics added.)

In *Calhoun* v. *Falstaff Brewing Corp.* (E.D.Mo. 1979) 478 F.Supp. 357, an employee brought actions against his former employer for violations of

---

[3]Benefits which are not covered by section 1002 include the free lifetime TWA travel passes upon retirement and the stock and thrift plan. Section 1002(2)(A) covers the retirement benefit. Section 1002(1)(A) covers the vacation, sick leave, medical, dental, insurance and disability benefits.

section 1140 and also alleged several common law counts. The crux of the complaint was that the employee was discharged "after more than nine years of satisfactory service, for no reason other than to prevent him from attaining vested rights" under the pension plan provided by Falstaff. (At p. 359.) The court stated that the allegations of the complaint did state a cause of action under section 1140. The court also noted that discharge for the purpose of preventing attainment of pension benefits "may have been one of the prime targets of ERISA." (At pp. 359-360.) The court also quoted from 2 Pension Plan Guide, (C.C.H.) paragraph 9101, which provided that "[o]ne target of the Pension Reform Act was the practice, however widespread, of terminating employees to prevent them from qualifying for pensions. The Pension Reform Act, of course, does not guarantee employment, but it does make it unlawful to discharge, fine, suspend, expel, discipline or discriminate against any participant for the purpose of interfering with the attainment of any right to which he may become entitled under his pension plan, the Pension Reform Act, or the generally superseded Welfare and Pension Plan Disclosure Act . . . ." (*Calhoun, supra,* at p. 360.)

Our state courts have considered the purposes of ERISA in the context of pension plans and community property laws. (*In re Marriage of Campa* (1979) 89 Cal.App.3d 113 [152 Cal.Rptr. 362].) There, it was noted that "Congress, in essence, aimed at assuring that pension rights are real—that new employees are not kept from participating in a plan for a long time *and that expected benefits do not evaporate due to* underfunding, maladministration, a company going out of business or a *termination of employment after many years of work."* (At p. 123, italics added.)

The allegation of the first cause of action clearly states a cause of action under section 1140 since it is alleged that appellant was discharged solely for the purpose of depriving him of various employee benefits.

Nowhere in the first amended complaint is ERISA mentioned. This omission, however, does not disguise the existence of a claim under ERISA. (See, e.g., *Andrews* v. *Louisville & Nashville R. Co.* (1972) 406 U.S. 320, 323-324 [32 L.Ed.2d 95, 98-99, 92 S.Ct. 1562]; *Magnuson* v. *Burlington Northern, Inc.* (9th Cir. 1978) 576 F.2d 1367; *Fristoe* v. *Reynolds Metals Co.* (9th Cir. 1980) 615 F.2d 1209.) ■ Where a claim exists under both state law and under ERISA, the state law claims survive only if the state courts have concurrent jurisdiction with the United States District Courts or if the claims are not preempted by ERISA. (*Eversole* v. *Metropolitan Life Ins. Co., Inc.* (C.D.Cal. 1980) 500 F.Supp. 1162, 1166; see also *Witkowski* v. *St. Anne's Hosp. of Chicago, Inc.* (1983) 113 Ill.App.3d 745, 749 [447 N.E.2d 1016, 1021].) Thus, contrary to what appellant asserts, he cannot

control which court has jurisdiction by virtue of the creativity of his pleading.

Having determined that appellant has in essence stated a claim under ERISA as well as under this state's common law, the third step of our inquiry requires us to determine whether the remedial provisions of ERISA preempt appellant's common law claims. We conclude that the state claims are preempted only to the extent that any or all of the employee benefits enumerated in the first cause of action fall within the aegis of section 1002.

As earlier quoted, section 1144(a) provides that the provisions of ERISA supersede any and all state laws which "relate to" any employee benefit plan described by the act. What Congress intended by the term "relate to" has been the source of much consternation and confusion.

In *Hewlett-Packard Co.* v. *Barnes* (N.D.Cal. 1977) 425 F.Supp. 1294, the district court discussed at length the legislative history concerning the language of section 1144, quoting both from conference committee reports and statements made under debate in the House and Senate which preceded enactment of the concurrent version of this section. The *Hewlett* court concluded that "[o]verall, the legislative history reveals both that Congress carefully considered the question of preemption, including the feasibility of enacting a more limited preemption provision, and that Congress ultimately enacted Section 514(a) [section 1144] with the express purpose of summarily preempting state regulation of ERISA-covered employee benefit plans." (*Hewlett-Packard Co., supra,* at p. 1300.)

The United States Supreme Court also recently recognized the broad reach of the preemptive clause in ERISA, in *Alessi* v. *Raybestos-Manhattan, Inc.* (1981) 451 U.S. 504 [68 L.Ed.2d 402, 101 S.Ct. 1895], where the court found that a New Jersey statute regulating workers' compensation benefits was preempted by ERISA. Ostensibly, the New Jersey statute related only to workers' compensation awards because the provision of the statute in question provided that workers' compensation awards could be set off against disability pension benefits or payments but not against retirement pension benefits or payments. However, noting the "broad pre-emptive intent" of section 1144, the Supreme Court stated that "[i]t is of no moment that New Jersey intrudes indirectly, through a workers' compensation law, rather than directly, through a statute called 'pension regulation.' ERISA makes clear that even indirect state action bearing on private pensions may encroach upon the area of exclusive federal concern. . . ." (*Alessi, supra,* at p. 525 [68 L.Ed.2d at p. 418].)

In the aftermath of *Alessi,* other cases have held that common law claims for retaliatory discharge (*Maxfield* v. *Central States Health, Wel. & Pen.*

*Funds* (N.D.Ill. 1982) 559 F.Supp. 158), and for tortious interference with contract (*Dependahl* v. *Falstaff Brewing Corp.* (8th Cir. 1981) 653 F.2d 1208), were preempted by the remedial provisions of ERISA.

In *Maxfield* v. *Central States Health, Wel. & Pen. Funds, supra,* 559 F.Supp. 158, a long-time employee sued his former employer and others for violations of the Age Discrimination in Employment Act (ADEA) 29 U.S.C. § 621 et seq., ERISA and for retaliatory discharge under the common law of Illinois. The provision of ERISA there involved was section 1141 which expressly prohibited retaliatory discharge of the type alleged in the complaint. The court there held that the Illinois common law claim for retaliatory discharge was preempted by section 1141 because sections 1132 and 1140 "expressly provide a remedy for [that] type of wrong. ERISA's broad remedial policy coupled with its express preemption provisions indicate that Congress intended to occupy the field of employee benefit plans." (*Manfield, supra,* at p. 160.)

In *Dependahl* v. *Falstaff Brewing Corp., supra,* 653 F.2d 1208, former executives of Falstaff sued Falstaff and a controlling shareholder for violations of ERISA and for common law fraud and tortious interference with contractual relationships. After the executives were discharged and after they refused to waive their right to benefits under a whole life insurance program in exchange for severance payments to which they were entitled, Falstaff stopped making severance payments to them. The United States Court of Appeals rejected the former executives' argument against federal preemption of the state tortious interference with contract cause of action. The argument of the executives is focused on the lack of substantial damage the cause of action would have upon the purpose of ERISA. The court there stated that "[i]f Congress has already provided a remedy for the violation of the former executives' benefit plans, then once Congress has expressed its intention to occupy the field, the state law is preempted, regardless of whether or not a conflict exists which involves a direct interference by the state law with the substantive federal legislation." (At pp. 1215-1216.)

More recently the Appellate Court of Illinois and a United States District Court in Illinois addressed the issue of whether an employee's state common law claims for wrongful discharge for the purpose of preventing attainment of certain benefits were preempted by ERISA. In *Witkowski* v. *St. Anne's Hosp. of Chicago, Inc., supra,* 113 Ill.App.3d 745 [447 N.E.2d 1016], the court held that an employee's complaint alleging wrongful discharge from employment solely to prevent her from participating in a long-term disability plan was preempted by ERISA. The court there observed that the language of the employee's claim "so closely track[ed] the language of [section 1140] of ERISA, she [was] necessarily bound to pursue her claim under the

dictates set out by Congress when it enacted ERISA. The plaintiff may not instead elect to pursue a State tort cause of action or a State contract cause of action where Congress has so specifically provided that Federal law rather than State law is applicable to a claim such as the plaintiff's." (At p. 749.)

The same conclusion was reached in *Gordon v. Matthew Bender & Co., Inc.* (N.D.Ill. 1983) 562 F.Supp. 1286. Gordon, an employee, brought an action against his former employer in which he alleged in count III that "as a participant in Matthew Bender's pension plan he was to become fully vested after eight years of employment, but that he was fired ten months before the vesting date." (At p. 1292.) It was also alleged that "Matthew Bender breached its duty of fair dealing by its bad faith termination, intended to deprive Gordon of his benefits." (At p. 1292.) The court held that because the conduct Gordon complained of in count III of his complaint was the same conduct proscribed by section 1140, count III was preempted by ERISA.

■ Here, section 1140 expressly proscribes the wrongful conduct alleged in appellant's first cause of action; i.e., discharge for the sole purpose of depriving appellant of employee benefits. The remedial provisions of ERISA, sections 1132 and 1140, coupled with section 1144 establish that, to the extent that the employee benefits enumerated in the first cause of action are within the regulation of the act, appellant's state law claims are preempted.

Appellant's assertions that his state law claims are not preempted because they do not regulate, either directly or indirectly, TWA's retirement plan miss the mark, as the cases discussed above demonstrate. ■ It is clear that any attempt by the state to regulate, directly or indirectly, the formation, terms or administration of private employee benefit plans is absolutely preempted by federal law unless the state law is *expressly exempted.* (See, e.g., *Delta Air Lines, Inc.* v. *Kramarsky* (2d Cir. 1981) 666 F.2d 21, 25; *Standard Oil Co. of California* v. *Agsalud* (9th Cir. 1980) 633 F.2d 760, 764.) However, it is just as clear that merely because appellant's claim is *not* directed at TWA's conduct concerning the formation, terms, or administration of the employee benefit plan, his claim does not thereby avoid the reach of ERISA's preemption provisions. As the Supreme Court noted in *Alessi* v. *Raybestos-Manhattan, Inc., supra,* 451 U.S. 504, 525 [68 L.Ed.2d 402, 417-418, 101 S.Ct. 1895], "[w]e need not determine the outer bounds of ERISA's pre-emptive language to find this New Jersey provision an impermissible intrusion on the federal regulatory scheme." While the Supreme Court did not intend to delineate, limit, or define the reach of the preemptive

provisions of ERISA, it did point out that the intrusion into an area of exclusive federal concern was clear even though indirect.

Appellant urges that his state law claims do not even tangentially affect areas regulated by ERISA, because they are "only concerned with the provisions of the contract of employment; the conduct of . . . TWA in terminating [his] employment; whether there was good cause for [his] termination; and whether . . . TWA had the intent of [*sic*] performing the promise not to terminate without good cause." This argument misses the mark for two reasons. First, while appellant's state law claims initially arose from contract, the fact that he alleged that he was discharged *solely* for the purpose of depriving him of employment benefits clearly changed the nature of his claim and brought it within the preview of ERISA. Second, we note that the public policy of this state alleged by appellant in the seventh paragraph of the first cause of action also clearly brings the cause within the provisions of ERISA. That paragraph recites that, "At the time defendant TWA promised that it would provide pension and profit sharing to [appellant], there existed a public policy in the State of California fostering private industry to participate in pension plans and profit sharing plans for the benefit of its employees and not allowing employers in private industry to take these said benefits away from its employees in any fashion without just cause." The public policy alleged squarely coincides with the policy which promulgated ERISA and, specifically, section 1140.

Furthermore, appellant's reliance upon *Provience* v. *Valley Clerks Trust Fund* (E.D.Cal. 1981) 509 F.Supp. 388 is misplaced. In *Provience,* causes of action for fraud, bad faith, intentional infliction of emotional distress, violation of federal regulations and violation of state regulations were brought against Valley Clerks Trust Fund. The essence of the common law claims of the complaint was, inter alia, that Valley Clerks Trust Fund "(1) fraudulently misrepresented the nature of benefits available under defendants' medical plan . . . ; (2) refused in bad faith to pay a legitimate claim for medical benefits . . . ; (3) intentionally inflicted severe emotional distress upon plaintiff in so refusing . . . ." (At p. 389.) The court there held that these state law claims were not preempted by ERISA, because they were "laws of general application in the state and are matters of important state concern, and . . . that such laws indirectly affect, but do not directly regulate the ERISA plan . . . involved." (At p. 391.)

While *Provience* superficially appears to support appellant's position that his state common law claims are not preempted, that case is factually distinguishable from the one at bar. Significantly, the misconduct in *Provience* concerned misrepresentations to the plaintiff of the nature of benefits which were actually available under a medical plan. The plaintiff there apparently

obtained treatment and submitted a claim under the belief that the claim was covered by the medical plan as represented. Here, however, appellant has not alleged that TWA misrepresented the *nature* of benefits available under the employee benefit plans or that appellant sought benefits which were withheld from him in bad faith. Rather, the gravamen of appellant's complaint is that he was discharged for the sole purpose of depriving him of employee benefits. Appellant's claim thus falls squarely within the exclusive remedial provisions of ERISA.

■ Finally, the last step in the inquiry involved in this appeal brings us to the question whether the state has concurrent jurisdiction or whether exclusive jurisdiction over appellant's claim is vested with the United States District Courts. We conclude that the United States District Courts have exclusive jurisdiction over the matter.

Appellant urges that the state court has concurrent jurisdiction over his claims because he "seeks damages for lost employee benefits caused by . . . TWA's wrongful termination, bad faith and fraud. We do not agree.

Under section 1132(e)(1), states have concurrent jurisdiction over civil actions only if the actions are brought under section 1132(a)(1)(B). Section 1132(a)(1)(B) permits a civil action to be brought by a participant of an employee benefit plan to "recover *benefits due* . . . under the terms of his plan, *to enforce his rights* under the terms of the plan, or *to clarify his rights to future benefits* under the terms of the plan." (Italics added.)

The gravamen of appellant's complaint concerns his discharge for the purpose of depriving him of employee benefits which he seeks to recover as part of his damages. Such damages are recoverable. (See *Bittner* v. *Sadoff & Rudoy Industries* (E.D.Wis. 1980) 490 F.Supp. 534, 536.) While appellant seeks damages in order to recover employee benefits allegedly lost as a result of his discharge, such prayers for damages do not change the nature of the complaint. The complaint cannot be construed, as appellant urges, as a civil action brought to recover benefits due, because the existence of or nature of employee benefits is not in dispute. Nor has it been alleged that TWA has refused to pay benefits to appellant within the meaning of section 1132(a)(1)(B). Such allegations would have made out a cause of action over which the state courts would have concurrent jurisdiction. (See, e.g., *Lederman* v. *Pacific Mut. Life Ins. Co.* (C.D.Cal. 1980) 494 F.Supp. 1020, 1022-1023; *Guthrie* v. *Dow Chemical Co.* (S.D.Tex. 1978) 445 F.Supp. 311, 314-315.) We conclude, then, that the state courts do not have concurrent jurisdiction over this matter and that exclusive jurisdiction rests with the United States District Courts alone as to those benefits covered by ERISA.

## DISPOSITION

The judgment is reversed, with directions to the trial court to permit amendment to the first amended complaint, restricting the claims to deprivation of benefits under the lifetime travel pass and stock and thrift plan.

Kingsley, Acting, P. J., and Lucas, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.