[No. B005789. Second Dist., Div. Two. Aug. 27, 1987.]

JOE M. LEMBO et al., Plaintiffs and Respondents, v.
TEXACO, INC., Defendants and Appellants.

**COUNSEL**

Latham & Watkins, John S. Welch, Michael R. Lindsay and Tony O. Hemming for Defendants and Appellants.

Boies & O'Rourke and Vilate D. Stewart for Plaintiffs and Respondents.

**OPINION**

**GATES, J.**—On August 13, 1987, our Supreme Court, having earlier granted review in this matter, remanded it to us "with directions to refile [the] opinion [we had] filed on June 12, 1986, with appropriate citations to *Pilot Life Insurance Co.* v. *Dedeaux* (1987) 481 U.S. 41 [95 L.Ed.2d 39, 107 S.Ct. 1549]. The Reporter of Decisions is directed to publish in the Official Appellate Reports the opinion as refiled."

We comply.

Defendant Texaco, Inc., appeals from the judgment entered pursuant to a jury verdict which awarded plaintiff Joe M. Lembo $250,000 in general damages and $1 million in punitive damages and plaintiff Winston A. Keene $500,000 in general damages. Texaco contends that "California courts do not have jurisdiction of plaintiffs' causes of action because of ERISA[1] preemption," arguing in the alternative that "[e]ven if the state courts have jurisdiction to apply state law to this action, the judgment must be reversed."

Because we find the preemption issue determinative, we restrict our recitation of "facts" to those alleged in plaintiffs' complaint.  ■  We note, however, that the evidence adduced at trial, even if fully credited, could but confirm these allegations. In addition, although nowhere in plaintiffs' complaint is ERISA mentioned, adept pleading cannot control which court has jurisdiction. (*Johnson* v. *Trans World Airlines, Inc.* (1983) 149 Cal.App.3d 518, 526 [196 Cal.Rptr. 896]; *Kilmer* v. *Central Counties Bank* (W.D.Pa. 1985) 623 F.Supp. 994, 998-1000.)

On December 23, 1981, plaintiffs Lembo and Keene filed a complaint in the Los Angeles County Superior Court charging their employer, Texaco, and their immediate supervisor, Max Nardoni, who is not a party to this appeal, with fraud, misrepresentation and infliction of emotional distress. In their first amended complaint filed on February 8, 1982, plaintiffs alleged that prior to May 1, 1980, they were "employed as accountants in the comptroller's department in [Texaco's] Los Angeles office, and at all times herein mentioned were eligible for voluntary retirement."

---

[1] Employee Retirement Income Security Act of 1974, 29 United States Code section 1001 et seq. All further statutory references are to title 29 of the United States Code unless otherwise indicated.

On approximately April 27, 1980, Lembo, who had been continuously employed by Texaco for approximately 33 years, purportedly requested "that he be allowed to retire under [Texaco's] retirement program commonly known as 'Voluntary Separation Program' [VSP]." Assertedly, Nardoni, acting within the scope of his employment for Texaco, informed Lembo he "could not take advantage of the Voluntary Separation Program" and that Texaco "had no plans to offer the program to any of its Comptroller's Department employees during the years 1980 and 1981." According to plaintiffs, Nardoni made these representations "with full knowledge that [Lembo] would relay said information to [Keene, who had been continuously employed by Texaco for approximately 36 years], and others, and, in fact, directed him to do so."

Moreover, plaintiffs averred that at the time Nardoni made these assertions, Texaco "planned to offer, and, on August 1[1], 1980, did offer said Voluntary Separation Plan to employees in the categories of employment of both plaintiffs, but not to Plaintiffs." Plaintiffs also charged Nardoni had suppressed this information and knowingly misrepresented Texaco's true intention in order to mislead plaintiffs and induce them to retire prior to the date the plan was offered, and that in reliance upon Nardoni's representation, Lembo and Keene had retired May 1, 1980, and August 1, 1980, respectively, rather than waiting until after the VSP had become effective.

Plaintiffs further accused defendant of acting with "oppression, fraud, and malice," claiming that as a result of this misconduct plaintiffs had lost pension and life insurance benefits and had suffered "emotional and mental anguish and physical pain and shock" for which each was entitled to general damages and "exemplary and punitive damages in the amount of $1,500,000.00. . . ."

As an alternative to their theory that Nardoni had knowingly deceived them regarding Texaco's intention to offer the VSP, plaintiffs contended Nardoni "did not have accurate information, or any information" concerning the VSP; that he was "aware that without such information, [he] could not accurately make the representations herein alleged;" and that he had concealed from plaintiffs his "lack of information and . . . inability to make the alleged representations accurately."

The action was thereafter removed to the United States District Court for the Central District of California upon Texaco's petition filed on February 11, 1982. Plaintiffs then sought to have the case remanded to the superior court "upon the ground that the federal court does not have jurisdiction of the issues involved in this action and that the court is required to enforce the decision made by plaintiffs as to the forum . . . ." In its order dated

May 12, 1982, the district court declared "the case was improperly removed to this Court, in that there is no jurisdiction herein" and remanded the matter to the superior court, where it was tried upon plaintiffs' state law claims. ■ The district court's order, of course, is not binding on this court. (*Provience* v. *Valley Clerks Trust Fund* (1984) 163 Cal.App.3d 249, 256 [209 Cal.Rptr. 276].)

■ ERISA "is a remedial statute designed to protect the interests of employees in pension and welfare plans, [citation], and to protect employers from conflicting and inconsistent state and local regulation of such plans, [citation]. The former purpose is achieved through requirements for reporting, disclosure, participation rights, vesting of rights to benefits, funding, fiduciary responsibilities, and claims procedures. *See* 29 U.S.C. §§ 1021-1145. The latter purpose is achieved through the preemption, with a few exceptions not relevant here, of all state laws relating to employee pension and welfare benefit plans. *See id.* § 1144." (*Scott* v. *Gulf Oil Corp.* (9th Cir. 1985) 754 F.2d 1499, 1501; *Pilot Life Insurance Co.* v. *Dedeaux, supra,* 481 U.S. 41, 44 et seq. [95 L.Ed.2d 39, 45 et seq., 107 S.Ct. 1549, 1551 et seq.]; *Shaw* v. *Delta Air Lines, Inc.* (1983) 463 U.S. 85, 104 [77 L.Ed.2d 490, 505, 103 S.Ct. 2890]; *Alessi* v. *Raybestos-Manhattan, Inc.* (1981) 451 U.S. 504, 508 [68 L.Ed.2d 402, 407, 101 S.Ct. 1895].)

Plaintiffs argue that by seeking to recover millions of dollars in damages in this state court action based upon lost pension rights,[2] they only indirectly and peripherally affect ERISA, citing certain decisions which found local law not superseded by federal law. ■ It is true that "[w]here the ERISA plan is irrelevant to the plaintiff's cause of action and no interest protected by the act is involved, the connection between ERISA and the applicable state law is too remote to invoke the preemption rule. . . ." (*Pacific Airmotive Corp.* v. *First Interstate Bank* (1986) 178 Cal.App.3d 1130, 1140 [224 Cal.Rptr. 233], and cases discussed therein, including, *Shaw* v. *Delta Air Lines, Inc., supra,* 463 U.S. 85; *Franchise Tax Bd.* v. *Laborers Vacation Trust* (1983) 463 U.S. 1 [77 L.Ed.2d 420, 103 S.Ct. 2841]; *Alessi* v. *Raybestos-Manhattan, Inc., supra,* 451 U.S. 504; *American Tel. & Tel. Co.* v. *Merry* (2d Cir. 1979) 592 F.2d 118; *McNeil* v. *Suffolk Cty. Painters Ins., etc.* (E.D.N.Y. 1977) 431 F.Supp. 387; *Cornell Mfg. Co.* v. *Mushlin* (1979) 70 App.Div.2d 123 [420 N.Y.S.2d 231].) However, this is not such a case. (*Pilot Life Insurance Co.* v. *Dedeaux, supra,* 481 U.S. at p. 52 et seq., [95 L.Ed.2d 39 at p. 51 et seq., 107 S.Ct. at p. 1555 et seq.].)

The ". . . preemption of state law claims by ERISA depends on the conduct to which such law is applied, not on the form or label of the law.

---

[2] The actual value of the additional pension benefits allegedly lost by defendants' conduct amounted only to approximately $51,600 for Lembo and $13,650 for Keene.

[Citation.]" (*Scott* v. *Gulf Oil Corp., supra,* 754 F.2d at p. 1504.) "If Congress has already provided a remedy for the violation of the former [employees'] benefit plans, then once Congress has expressed its intention to occupy the field, the state law is preempted, regardless of whether or not a conflict exists which involves a direct interference by the state law with the substantive federal legislation. . . ." (*Dependahl* v. *Falstaff Brewing Corp.* (8th Cir. 1981) 653 F.2d 1208, 1215-1216; *Alessi* v. *Raybestos Manhattan, Inc., supra,* 451 U.S. 504, 525 [68 L.Ed.2d 402, 418].)

Applying these principles to plaintiffs' claim, it is clear their allegations that they were eligible for voluntary retirement and would have received benefits. under the VSP[3] had not Texaco fraudulently induced them to retire for the sole purpose of depriving them of that right, "fall[] squarely and directly into the confines set out in ERISA rather than merely peripherally affecting an area with which ERISA is concerned." (*Witkowski* v. *St. Anne's Hosp. of Chicago, Inc.* (1983) 113 Ill.App.3d 745 [447 N.E.2d 1016, 1020].)

■  Undoubtedly fraud and concealment constitute a breach of fiduciary obligations under ERISA. (See § 1113.) Furthermore, if Texaco engaged in the conduct alleged by plaintiffs, it violated its fiduciary duty to administer the plan "solely in the interest of the participants . . . ." (§ 1104; *Peoria Union Stock Yards Co.* v. *Penn Mut. Life Ins.* (7th Cir. 1983) 698 F.2d 320, 326; *Ogden* v. *Michigan Bell Telephone Co.* (E.D. Mich. 1983) 571 F.Supp. 520, 523.) While an employer may have no duty to disclose in advance its intent to implement a VSP, it ought not to misrepresent its true intentions to those who make specific inquiry on the subject.

Such conduct also could constitute a violation of that portion of section 1140 which prohibits an employer from discharging, fining, suspending, expelling, disciplining, or discriminating against an employee ". . . for the purpose of interfering with the attainment of any right to which [the employee] may become entitled" under an employee benefit plan.

Having concluded ERISA preempts any state cause of action and, therefore, only federal law applies, we must yet consider whether our state courts have concurrent jurisdiction to consider the merits of plaintiffs' claim. ■  Under ERISA state courts have concurrent jurisdiction with the federal district courts only in those cases where a civil action is brought by a participant or beneficiary of an employee benefit plan "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the

---

[3] There is no dispute that Texaco's VSP is an employee benefit plan within the meaning of section 1002.

terms of the plan." (§§ 1132(a)(1)(B), 1132(e)(1).) In all other instances, the federal district courts have exclusive jurisdiction of civil actions relating to those plans governed by ERISA. (§ 1132(e)(1).)

Section 1132(a)(1)(B) only ". . . encompasses civil actions for violations of the *terms of a benefit plan,* while [§ 1132(a)(3)] authorizes civil actions for violations of *the provisions of ERISA* itself. . . ." (*Kross* v. *Western Elec. Co., Inc.* (7th Cir. 1983) 701 F.2d 1238, 1244, italics in original. See also *Provience* v. *Valley Clerks Trust Fund, supra,* 163 Cal.App.3d 249, 261-262; *Johnson* v. *Trans World Airlines, Inc., supra,* 149 Cal.App.3d 518, 530.) Consequently, actions involving breaches of fiduciary duties (*Menhorn* v. *Firestone Tire & Rubber Co.* (9th Cir. 1984) 738 F.2d 1496, 1498; H.R.Conf. Rep. No. 1280, 93d Cong., 2d Sess. (1974), reprinted in 1974 U.S. Code Cong. & Admin. News 5038, 5109), as well as those seeking redress for violations of section 1140 (*Johnson* v. *Trans World Airlines, Inc., supra,* 149 Cal.App.3d at p. 530; *Wayte* v. *Rollins International, Inc.* (1985) 169 Cal.App.3d 1, 15 [215 Cal.Rptr. 59]; *Provience* v. *Valley Clerks Trust Fund, supra,* 163 Cal.App.3d 249, 261-262) are within the exclusive jurisdiction of the federal courts.

As the court noted in *Menhorn* v. *Firestone Tire & Rubber Co., supra,* 738 F.2d at page 1500, footnote 2, ". . . Congress's choice to grant the state courts concurrent jurisdiction over . . . cases [brought under § 1132(a)(1)(B)] squares with its overall legislative goals. Actions to recover benefits or enforce rights under the terms of a plan will typically involve the application of those general principles of contract law with which the state courts have had substantial experience before ERISA; their expertise qualifies them to evaluate these rules in the light of ERISA's policies and apply federal common law. . . ."

■ Plaintiffs urge they do not qualify as "participants" within the meaning of section 1002(7) and hence lack standing to sue under ERISA. As previously noted, a civil action under section 1132(a)(1)(B) may be brought by one who fits the definition of a *participant* in or beneficiary of a plan. To bring an action under section 1132(a)(3) one must be a *participant,* beneficiary or fiduciary. "The term 'participant' means any employee or former employee of an employer . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer . . . ." (§ 1002(7).)

In support of this contention plaintiffs rely principally upon a trio of cases from the United States Court of Appeals for the Ninth Circuit, *Kuntz*

v. *Reese* (9th Cir. 1986) 785 F.2d 1410; *Scott v. Gulf Oil Corp., supra,* 754 F.2d 1499, and *Freeman* v. *Jacques Orthopaedic & Joint Implant Surg.* (9th Cir. 1983) 721 F.2d 654. In *Scott* the court held that a claim for the loss of benefits which the former employees of an oil refiner would have accumulated while employed by the purchaser of that refinery were it not for their former employer's tortious actions was not preempted by ERISA. However, "the heart of the matter" in *Scott* was that the purchaser of the refinery *had no plan* covered by ERISA and the former employers' claim therefore did not "raise any issues concerning the matters regulated by ERISA . . . ." (*Id.,* at pp. 1505-1506.) Manifestly, this is inapposite to the instant situation.

Similarly in *Kuntz* v. *Reese, supra,* 785 F.2d 1410, 1411, the plaintiffs were "former employees whose vested benefits under the plan ha[d] already been distributed in a lump sum" and who sought, not to enforce this plan, but to recover damages for having been misled as to the terms of that plan.

Although a plan covered by ERISA did exist in *Freeman,* the employee had waived his right to participate in it, allegedly as the result of fraud on the part of his former employer. The court concluded Freeman had no standing to sue for benefits under the plan, pointing out "[n]o contributions were made . . . on his behalf" and, consequently, there was no way in which he could belatedly become eligible for its benefits. (*Freeman v. Jacques Orthopaedic & Joint Implant Surg., supra,* 721 F.2d 654, 655.)

In the present proceeding, however, an employer funded plan, the VSP, did exist and plaintiffs never waived their right to participate therein. On the contrary, if their allegations and supporting proofs are correct, they met the eligibility requirements for voluntary retirement and specifically sought to retire under the VSP program.[4] In such case, Texaco, knowing they would soon be afforded an opportunity to do so, intentionally sought to deprive them of their anticipated benefits by falsely informing them the program would not be available.

Under these circumstances, plaintiffs certainly had a "colorable claim to vested benefits" (*Saladino* v. *I.L.G.W.U. Nat. Retirement Fund* (2d Cir. 1985) 754 F.2d 473, 476-478, cited with approval in *Kuntz* v. *Reese, supra,* 785 F.2d 1410), regardless of whether they had been "formally" enrolled in the plan. Our conclusion in this regard is not only consistent with the position adopted by the Ninth Circuit, it also advances Congress's intent

---

[4] Plaintiffs Keene and Lembo apparently needed only to have set their retirement dates 10 and 100 days later in order for their rights to have fully vested.

that the courts effectuate the remedial purposes of the statute by construing the jurisdictional requirements broadly. (§ 1001(b); S.Rep. No. 127, 93d Cong., 2d Sess., reprinted in 1974 U.S. Code Cong. & Admin. News 4639, 4838, 4871.) In addition, it accords with the determinations of at least two district courts that actions charging former employers with false statements regarding the future availability of early retirement benefits are within the jurisdiction of the federal courts under section 1132. (*Sleichter* v. *Monsanto Co.* (E.D.Mo. 1985) 612 F.Supp. 856; *Ogden* v. *Michigan Bell Telephone Co., supra,* 571 F.Supp. 520.)

There is already ample authority that the federal courts have jurisdiction under section 1132 to entertain suits by former employees who have been discharged solely to prevent them from attaining impending benefits under an ERISA plan. (See, e.g., *Johnson* v. *Trans World Airlines, Inc., supra,* 149 Cal.App.3d 518, 524-525; *Kross* v. *Western Elec. Co., Inc., supra,* 701 F.2d 1238, 1243; *Folz* v. *Marriott Corp.* (W.D.Mo. 1984) 594 F.Supp. 1007, 1013-1015; *Ursic* v. *Bethlehem Mines* (W.D.Pa. 1983) 556 F.Supp. 571, 574-575 (judgment affirmed on this point in *Ursic* v. *Bethlehem Mines* (3d Cir. 1983) 719 F.2d 670); *Calhoun* v. *Falstaff Brewing Corp.* (E.D.Mo. 1979) 478 F.Supp. 357, 360.) In our view the circumstances in these cases cannot be meaningfully distinguished from those in the instant case, at least for purposes of determining standing.

Lastly, plaintiffs' assertion that Texaco "does not seriously or in good faith assert ERISA preemption," is refuted by the record. Texaco has persistently pursued this claim below in both the federal and state courts. The extent of its efforts were recognized during the hearing on Texaco's motion for judgment notwithstanding the verdict or for new trial. When counsel for Texaco asserted, "the ERISA issue is still the paramount one," the trial court retorted, "Well, we have crossed that bridge three times. This is the fourth time." Later counsel for plaintiffs offered "to briefly review the ERISA arguments" and the court declared, "Well, there is no need. I don't see any merit to that. As I say, they have had four cracks at the bat on that issue."

We certainly perceive no inconsistency between Texaco's premise that plaintiffs are not entitled to participate in the VSP because they retired voluntarily prior to the program's effective date rather than as the result of any fraud or other wrongdoing on Texaco's part, and its position that if plaintiffs' contrary allegations are true, they would indeed be "participants" within the meaning of section 1002(7).

The judgment is reversed and the matter is remanded for further proceedings consistent with the view expressed herein. Each party shall bear its own costs on appeal.

Roth, P. J., and Compton, J., concurred.