**Carolyn Ward TUCKER, Plaintiff,**

v.

**EMPLOYERS LIFE INSURANCE COMPANY; et al., Defendants.**

**Civ. A. No. CV88–PT–0790–S.**

United States District Court,
N.D. Alabama, S.D.

July 11, 1988.

Frank R. Parsons, James R. Morgan, Birmingham, Ala., for plaintiff.

Scott M. Phelps and Michael D. McKibben, Bradley, Arant, Rose & White, Birmingham, Ala., for defendants.

## MEMORANDUM OPINION

PROPST, District Judge.

This cause comes to be heard on a Motion to Dismiss and a Motion to Strike filed on May 12, 1988. The plaintiffs have also filed a Motion to Remand. The defendants contend that the plaintiff's state law claims of breach of contract, bad faith and fraud are preempted by the Employee's Retirement Security Act of 1974, 29 U.S.C. §§ 1001 et seq. (ERISA). The plaintiff, on the other hand, argues that her tort claims "should not be similarly dismissed as preempted state tort claims, inasmuch as a preemption of the same is not a defense." Additionally, she asserts that her claims "remain viable and distinct from any claim of benefits going directly to the plan itself. As such, the plaintiff contends, "it should be found in the imposition of punitive and other extra-contractual damages is not limited through the ERISA preemption process."

ERISA is a complex and reticulated statute whose labyrinth-like sections have been the subject of much debate. Perhaps no other section of its provisions has been in the vortex of more controversy than its preemption provisions. (ERISA § 514(a), 29 U.S.C. § 1144). ERISA contains three subsections which must be read together in order to determine if preemption is mandated by the statute.[1] The first is the general preemption clause which provides: "Except as provided in subsection (b) of this section, the provisions of this subchapter ... shall supersede any and all *State laws*[2] *insofar as they may now or hereafter relate to any employee benefit plan* described in Section 1003(a) of this title and not exempt under Section 1003(b) of this title." (emphasis added). As is clear upon the face of the statute, state laws must "relate to" an "employee benefit plan." Thus, an issue always present is whether there is an employee benefit plan as defined by the Act.[3]

Another aspect within this clause that has been the subject of much litigation has been the term "relate to." Generally, the Supreme Court has interpreted it in an expansive manner. This term has been given its broad common sense meaning such that a state "law 'relates to' a benefit plan in the normal sense of the phrase, if it has connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983).[4]

---

**1.** Statements by ERISA's sponsors disclose what the statute was to preempt. "[W]ith the preemption of the field, we round out the protection afforded participants by eliminating the treat of conflicting and inconsistent state and local regulations." 120 *Cong.Rec.* 29197 (1974) (statements of Rep. Dent). "It should be stressed that with the narrow exceptions specified in the bill, the substantive and enforcement provisions of the conference substitute are *intended to* preempt the field for Federal Regulations, thus eliminating the threat of conflicting or inconsistent state and local regulation of employee benefit plans." *Id.* at 29933 (statement of Sen. Williams).

**2.** 29 U.S.C. § 1144(c)(1) defines state law as "all laws, decisions, rules, regulations, or other state actions having the effect of law, of any State." 29 U.S.C. § 1144(c)(2), further defines state as including a State, any political subdivisions thereof, or any agency or instrumentality of either, which purports to regulate, *directly or indirectly,* the terms and conditions of employee

benefit plans covered by this subchapter [of the Act]." (emphasis added). *See also Alessi v. Raybestos–Manhattan, Inc.,* 451 U.S. 504, 525, 101 S.Ct. 1895, 1907, 68 L.Ed.2d 402 (1981) (relying on directly and indirectly language, court noted "ERISA's authors clearly meant to preclude the States from avoiding through form the substance of the pre-emption provision.").

**3.** There must be an employee benefit plan for the provisions of ERISA to apply in any case, whether state law claims are preempted or not. *See* 29 U.S.C. § 1003(a).

**4.** *See e.g. Shiffer v. Equitable Life Assur. Soc'ty of U.S.,* 838 F.2d 78 (3rd Cir.1988) (relate to giving its broadest common-sense meaning); *Nevill v. Shell Oil Co.,* 835 F.2d 209 (9th Cir. 1987) (any state claims that relate to ERISA are preempted; so long as relationship is not too tenuous, remote or peripheral); *Board of Trustees of Western Conference of Teamsters Pension Trust Fund v. H.F. Johnson, Inc.,* 830 F.2d 1009, 1016 (9th Cir.1987) ("ERISA preemption is to be

■ Still this statutory maze would not be complete without mentioning laws which are exempt from ERISA preemption. The "saving clause"[5] of the statute protects from preemption state laws which regulate insurance, banking or securities. 29 U.S.C. § 1144(b)(2)(A). Even so, the so-called "deemer clause" qualifies the saving clause and states that ERISA plans shall not "be deemed to be an insurance company or other insurer...." 29 U.S.C. § 1144(b)(2)(B). Thus, the saving clause, when construed with the deemer clause, protects from preemption state insurance laws which indirectly regulate *insured* plans. *Metropolitan Life Insurance Co. v. Massachusetts*, 471 U.S. 724, 105 S.Ct. 2380, 2392–93, 85 L.Ed.2d 728 (1985).[6] In order to be saved, then, the state law must regulate insurance; any regulation of the plan must be indirect; and the plan must be insured, meaning by an independent insurer rather than self-insurance.[7] *Metropolitan Life*, 105 S.Ct. at 2393.

A summary of the mechanics of the preemption statutes of ERISA mentioned above reveals this process: First, there must be a "plan" as defined by the Act. Second, if a state law "relates to" an employee benefit plan it is preempted. 29 U.S.C. § 1144(a) (general preemption clause). Third, the "savings clause" must be considered. This savings clause excepts laws which regulate insurance. 29 U.S.C.

§ 1144(b)(2)(A). Last, the "deemer clause" makes clear that a state law which purports to regulate insurance cannot "deem an employee benefit plan to be an insurance company." 29 U.S.C. § 1144(b)(2)(B); *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987).

As indicated above, the starting place for any ERISA preemption issue is the determination of whether a "plan" exists under the Act. This inquiry is compounded in this case because the complaint states that "[t]he employees of Augmentation Health Care Services reached a level that was below acceptance by the Defendants as a minimum for group coverage and hence the Plaintiff was allowed to transfer her policy to an individual policy." The complaint further stated that the plaintiff "either individually or through Augmentation Health Care Services [employer] paid the premium amounts as requested by the Employer Life Insurance Co." Thus, the issue becomes: "Is there an 'employee benefit plan' as described by ERISA, when a group plan is converted to an individual plan and the employer continues to act as a conduit for the premiums?"

■ In determining whether a plan exists under ERISA, this court must determine (1) if the benefits are those covered by the statute and (2) if there are some sort of procedures implementing the plan.

construed broadly, and is not limited to state laws designed specifically to affect employee benefit plans"); *Firestone Tire & Rubber Co. v. Neusser*, 810 F.2d 550 (6th Cir.1987) (excellent summary of general preemption clause). *See generally*, Kilberg & Inman, "Preemption of State Laws Relating to Employee Benefit Plans: An Analysis of ERISA Section 514," 62 Tex.L. Rev. 1313, 1316–20 (1984).

5. There is very little legislative history concerning the relationship between the general preemption clause and the savings clause. The Conference Committee Report simply states: "The preemption provisions of Title I are not to exempt any person from any State law that regulates insurance." H.R.CONF.REP. NO. 1280, 93d Cong., 2d Sess. 383 (1974), U.S.Code Cong. & Admin.News 1974, pp. 4639, 5162.

6. Three other criterion have been used to determine whether a practice falls under the "business of insurance." The Supreme Court in *Metropolitan Life* made use of case law under the

McCarran–Ferguson Act, 15 U.S.C. § 1011 *et seq.* in interpreting the savings clause. The Court considered these factors:

"*[F]irst,* whether the practice has the effect of transferring or spreading a policyholder's risk; *second,* whether the practice is an integral part of the policy relationship between the insurer and the insured; and *third,* whether the practice is limited to entities within the insurance industry." *Union Labor Life Ins. Co. v. Pireno,* 458 U.S. 119, 129, 102 S.Ct. 3002, 3009, 73 L.Ed.2d 647 (1982) (emphasis in original).

7. *See also Pilot Life Insurance Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987) (whether the benefits were funded by a third party insurance company or directly from the employer had no bearing on whether the insurance exception was applicable. State regulation was preempted).

*Donovan v. Dillingham,* 688 F.2d 1367, 1373 (11th Cir.1982). ERISA has three broad categories of benefit plans which are covered: employee pension plans, welfare plans and plans which are both welfare and pension plans.[8] 29 U.S.C. § 1002(3). Welfare benefit plans are described in 29 U.S.C. § 1002(1) to include "medical, surgical, or hospital care" benefits. Since health insurance is a benefit described in this subsection, the benefits would fall within the ambit of ERISA.

Having determined that these benefits are included within the scope of ERISA, this court must now explore whether there is a "plan." The Eleventh Circuit has stated that "a 'plan, fund, or program' under ERISA is established if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits." *Donovan v. Dillingham,* 688 F.2d 1367, 1373 (11th Cir.1982). Recently, the United States Supreme Court further clarified the definition of "plan" in *Fort Halifax Packing Co. v. Coyne,* —— U.S. ——, 107 S.Ct. 2211, 2217, 96 L.Ed.2d 1 (1987). That case held that a statute requiring one time, lump-sum severance pay upon plant closing did not constitute a plan because there was little or no administration necessary in order to implement it.[9]

■ In the case *sub judice,* the very bare facts on the face of the complaint reveal that there was a group plan sponsored by the employer which was subsequently converted to individual plans because the number of employees was reduced. The employer, however, continued to collect the premiums. Since this plan was initially sponsored by the employer who collected the premiums thereafter, it would seem that there was an ongoing relationship concerning the plan between the plaintiff and her employer.[10] Thus, from the complaint, there appears to have been an *employee* plan within the meaning of the Act. *See also, Belasco v. W.K.P. Wilson & Sons, Inc.,* 833 F.2d 277, 280 (11th Cir.1987).

Having determined that there is a plan under ERISA, the court must now explore the preemption clauses of ERISA. In her complaint, plaintiff also demands judgment for breach of contract, bad faith, misrepresentation and fraud. These common law torts *are* preempted by ERISA. There is no question that these claims in the case *sub judice* relate to employee benefit plans. She alleges that the defendant "negligently, wantonly and/or intentionally failed to provide the coverage which was called for in the contract." Since this court is not to interpret "relate to" in an esoteric, obfuscated way, but is to construe it in a common sense manner, the theories propounded certainly meet the criteria for the general preemption clause. *Dedeaux,* 107 S.Ct. at 1553.

From the foregoing analysis, most courts have concluded that breaches of contract are preempted by ERISA in as much as they relate to employee benefit plans.[11]

**8.** For examples of plans which are both pension and welfare plans, see 29 C.F.R. § 2510.3–2.

**9.** Since there was no administration necessary, there was little or no chance that the state laws would interfere with the regulatory scheme of ERISA. *See also California Hosp. Ass'n v. Henning,* 770 F.2d 856 (9th Cir.1985), *cert. denied,* 477 U.S. 904, 106 S.Ct. 3273, 91 L.Ed.2d 564 (1986) (California statute barring forfeiture and requiring payment of pro-rata payment of vacation pay upon termination was not preempted).

**10.** At oral argument, it was suggested that one issue is whether the premium(s) have been paid. This would relate to the employer's "administration" in making the payments.

**11.** *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987) (af-

firmed preemption of state contract claims alleging improper processing of benefit claims arising out of an employer's termination of disability benefits); *Salomon v. Transamerica Occidental Life Ins. Co.,* 801 F.2d 659 (4th Cir.1986) (state law estoppel and breach of contract claim preempted by ERISA); *Holland v. National Steel Corp.,* 791 F.2d 1132 (4th Cir.1986) (state breach of contract claim for vacation benefits preempted); *Gilbert v. Burlington Industries,* 765 F.2d 320 (2nd Cir.1985), *aff'd,* 477 U.S. 901, 106 S.Ct. 3267, 91 L.Ed.2d 558 (1986) (state breach of contract claim for denial of severance pay covered under plan preempted); *Scott v. Gulf Oil Corp.,* 754 F.2d 1499 (9th Cir.1985) (state contract claims for denial of severance benefits preempted).

Likewise, fraud claims are preempted. *Belasco v. W.K.P. Wilson & Sons, Inc.*, 833 F.2d 277 (11th Cir.1987).[12] Regarding the bad faith claims, the plaintiff might contend that bad faith is a law "which regulates insurance" under the savings clause. The Supreme Court in *Dedeaux*, however, concluded that Mississippi's law of bad faith had the same roots "in the general principles of tort and contract law." *Dedeaux*, 107 S.Ct. at 1554. In applying the *Dedeaux* case to Alabama's bad faith provisions, both the Eleventh Circuit and the Alabama Supreme Court have concluded that the tort is preempted by ERISA. *Belasco*, 833 F.2d at 281; *Hood v. Prudential Insurance Co. of America*, 522 So.2d 265 (Ala.1988).

■ Since these claims fall within the parameters of ERISA, the defendants' motion to strike the jury demand will be granted. ERISA precludes a trial by jury. *Chilton v. Savannah Foods & Indus., Inc.*, 814 F.2d 620 (11th Cir.1987).[13]

■ The motion to dismiss defendants Brian Henley and Insurance and Invest- ment Consultants, Inc., however, will *not* be granted. These parties may be fiduciaries under ERISA and therefore liable under its provisions. As defined by the statute, a fiduciary is a person or entity to the extent he exercises discretionary authority or control respecting management of the plan or has discretionary authority or responsibility in the administration of the plan. 29 U.S.C. § 1002(21)(A).[14] Since the degree of discretion and control is largely a factual question to be gleaned from discovery, the motion to dismiss these parties must be denied at this point.

■ It is also clear from a reading of *Bishop v. Osborn Transportation, Inc.*, 838 F.2d 1173 (11th Cir.1988) that punitive damages are not recoverable under ERISA. In that case, the court stated "nothing in the statutory language of section 1132(A) supports the employee's position that punitive damages are recoverable under Section 1132(a)." (ERISA § 502) *Id.* at 1174. Con-

---

**12.** *Nevill v. Shell Oil Co.*, 835 F.2d 209 (9th Cir.1987) (state claims for breach of contract, breach of covenant of good faith and *fraud* preempted by ERISA); *Phillips v. Amoco Oil Co.*, 799 F.2d 1464, 1469 (11th Cir.1986) (limited to the particular facts of the case, court ruled Alabama state common law fraud claim was preempted by ERISA), — U.S. —, 107 S.Ct. 1893, 95 L.Ed.2d 500 (1987). *U.A.W. v. Harper & Row Publishers, Inc.*, 576 F.Supp. 1468 (S.D.N.Y.1983) (state claims for fraud and unjust enrichment arising from employer's discontinuing retirement plan preempted); *Lembo v. Texaco, Inc.*, 194 Cal.App.3d 531, 239 Cal.Rptr. 596 (1987) (ERISA preempted employee's claims against his employer and supervisor for fraud, misrepresentation and infliction of emotional distress).

**13.** Other circuit courts have uniformly held that there is no right to a jury trial under ERISA. *See e.g., Turner v. CF & I Steel Corps.*, 770 F.2d 43 (3rd Cir.1985), *cert. denied*, 474 U.S. 1058, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986) (since § 502(a)(1)(B) of ERISA contemplates only equitable relief, a jury trial is unavailable); *Katsaros v. Cody*, 744 F.2d 270, 278–79 (2d Cir.), *cert. denied*, 469 U.S. 1072, 105 S.Ct. 565, 83 L.Ed. 506 (1984) (no right to a jury trial of ERISA actions against pension fund trustees seeking equitable remedy of restitution); *Wardle v. Central States, Southeast and Southwest Areas Pension Fund*, 627 F.2d 820, 829 (7th Cir.1980), *cert. denied*, 449 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841 (1981) (Congress' silence on jury right issue under ERISA reflects an intention that suits for benefits are equitable in nature); *Calamia v. Spivey*, 632 F.2d 1235, 1236–37, (5th Cir. Unit A 1980) ("mere fact that plaintiff would receive a monetary award if he prevailed does not compel the conclusion that he is entitled to a jury trial."). *See also* Note, "The Right to Jury Trial in ERISA Actions Under Section 502(A)(1)(B) of ERISA," 96 Harv.L.Rev. 737, 738 (1983).

**14.** *See e.g. Shaw v. IAM Pension Plan*, 563 F.Supp. 653, 657 (C.D.Calif.1983), *aff'd*, 750 F.2d 1458 (9th Cir.1985), *cert. denied*, 471 U.S. 1137, 105 S.Ct. 2678, 86 L.Ed.2d 696 (1985). ("Officials of a company which sponsors a plan are themselves fiduciaries to the extent that they retain authority for selection and retention of plan fiduciaries because, to that extent, they have retained discretionary authority or discretionary control respecting management of the plan").

sequently, the demand for punitive damages will be stricken as well.[15]

---

**15.** The Supreme Court has held that in actions alleging improper or untimely processing of a benefit claim, punitive or extra-contractual compensatory damages cannot be awarded under Section 409(a) (29 U.S.C. § 1109) of ERISA. *Massachusetts Mutual Life Ins. Co. v. Russell,* 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985). The Court declined to determine their availability under ERISA Section 502, 29 U.S.C. § 1132. Like the Eleventh Circuit, other courts, which have addressed this issue since the advent of *Russell,* have held that extra-contractual or punitive damages are not recoverable under Section 502. *See e.g., Sokol v. Berstein,* 803 F.2d 532 (9th Cir.1986) (ERISA precludes extra-con-

tractual damages under § 502(a)(3)); *Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan Enterprises, Inc.,* 793 F.2d 1456, 1462–65, *reh'g denied,* 797 F.2d 977 (5th Cir.1986), *cert. denied,* 479 U.S. 1034, 107 S.Ct. 884, 93 L.Ed.2d 837 (1987) (Punitive damages are not recoverable under ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) or under § 502(a)(3)(B)); *Powell v. Chesapeake & Potomac Tele. Co.,* 780 F.2d 419, 424–25 (4th Cir.1985), *cert. denied,* 476 U.S. 1170, 106 S.Ct. 2892, 90 L.Ed.2d 980 (1986) (§ 1132(a)(3) does not authorize extra-contractual or punitive damages for breach of a plan administrator's fiduciary duties under ERISA).